[Crim. No. 2455.   Fourth Dist., Div. One.   May 12, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. GORDON RICHARD WOOD, Defendant and Appellant.

Peter J. Hughes, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James Assistant Attorney General, and Walter E. Wunderlich, Deputy Attorney General, for Plaintiff and Respondent.

WHELAN, J. — Defendant Wood and a codefendant, Whitman, were convicted of burglary in the second degree. From the judgment imposing sentence Wood alone appeals.

The burglarized premises, a market, were entered on

August 8, 1965, through a hole cut in the roof. The roof was covered with paper impregnated with tar, encrusted with fine gravel, which in the area around the hole had received color from paint spray that had drifted from adjoining premises.

Except for a statement made by defendant Wood (discussed hereafter), from which an admission of guilt might be inferred, the evidence against him was wholly circumstantial, but would have been sufficient without the admission of complicity to support a finding of guilt. Under well recognized rules, the erroneous admission into evidence of an admission of guilt would require reversal, regardless of the sufficiency of the other evidence to support the jury's finding.

A significant part of the circumstantial evidence consisted of the analysis and comparison of tar and paint stains found on Wood's clothing worn by him on August 8 and on particles of gravel found in his clothing with the tar and gravel of the roofing material as affected by the paint spray. That the clothing was that worn by Wood on the day of the burglary was shown by a statement to that effect made by Wood, which will be discussed hereafter.

The trial began November 30 and ended December 2, 1965.

### CONTENTIONS ON APPEAL

Wood's chief contention on appeal is that prejudicial error resulted from allowing testimony concerning his admission to an accusatory statement obtained when he was in custody after arraignment and in the absence of his attorney.

A subsidiary point is that Wood's statement that he had worn certain clothing on August 8 was obtained in derogation of his right to counsel and his right to remain silent.

The testimony we relate hereafter was given outside the presence of the jury: Wood was arrested on the evening of August 9. At the time of his arrest Wood said to the arresting officer:

"You don't have to advise me of my rights. I have already talked to my attorney, Mr. O'Laughlin."

At about 8:10 a.m. of August 10, Officer Caylor interviewed Wood in the city jail.

On the afternoon of August 9, Caylor had interviewed Whitman, who had been arrested earlier, in the city jail. Whitman had first been given the tripartite advice concerning his rights and the possible consequence of his speech. At a

certain point in the interrogation, Caylor was informed by the jailer that John O'Laughlin, a lawyer, was at the jail to see Whitman. Caylor thereupon terminated the interview.

Caylor when he saw Wood on August 10, was accompanied by a detective officer. Caylor testified:

"I advised him of his right to counsel, to be represented by an attorney, his right to remain silent regarding the facts in this case. And that anything he said could be used against him in a court of law. And further, that I asked him if he had an attorney. He said that he did. And I informed him that I was aware of this . . . and that under these circumstances I wanted Mr. Wood to know that he had a right to have this attorney present at any time, and that he didn't have to talk to me, but this didn't mean that he couldn't talk to me. But if he did, that anything he said could be used against him.''

In reply, Wood said he would talk about anything but the ''caper.''

After the interview, Caylor got a key, which had been removed from Wood's person when he was booked and which had a number stamped into or attached to it. The key was shown to Wood, who said, when questioned, that it was the key to a locker in the Greyhound Bus Depot, and that the locker contained clothing of Wood which he had worn on August 8. Caylor obtained Wood's permission to go to the locker and remove the clothing, which he did at about 9:10 a.m.

Wood and Whitman appeared without counsel in municipal court on August 11 and were then informed of the charge against them. Mr. Sada, Whitman's trial counsel, was appointed to represent both. He appeared with them for arraignment on August 12, and again at the preliminary hearing represented both.

On August 12, Caylor interviewed Wood in the county jail at 3 p.m. About 10 minutes after the interview started, Wood was joined by Wood's state parole agent, Paschal.

At the outset, Caylor told Wood:

"That he had a right to be represented by counsel. And that he did not have to say anything regarding the facts in this case, but that anything he said could be used against him in a court of law. And further, I was aware that he had been to arraignment and that an attorney had been appointed for him. I inquired whether he had contacted his attorney yet, and he said no. And I asked him if he had contacted Mr.

Paschal or Mr. Paschal had contacted him, and he said no. I then advised him that under these circumstances he should be aware that he had a right to have this attorney there, or that he could call for him at any time. But this did not mean that he could not talk to me. He could refuse to. But that if he did talk to me, anything he said could be used against him in a court of law.''

It was Caylor's information that while Wood had been before the municipal court he had been told that counsel would be appointed for him, but that it was not done during Wood's presence in court.

Wood then asked what would happen to him, to which Caylor replied that he didn't know.

Wood stated that he didn't know what to do.

After Paschal arrived, Caylor reiterated the admonishment.

Caylor then began to question Wood about the burglary; and said he was not at liberty to give advice to a suspect, and the only advice he would give would be to tell the truth.

Caylor then gave a detailed recital as to what he believed were Wood's movements on August 8, including the entry of the market and the flight therefrom. He referred to a companion of Wood, but did not name the companion. His recital was based in large part upon information obtained from Whitman in a second interview. Having done that, Caylor asked Wood, ''Is that what happened?'' to which Wood replied, ''Yes, that is true.'' Caylor refused to state the source of his information, giving this account:

''Wood said, 'Man, if you got a signed confession from Dessie [Whitman], he had to be the one who told you about it.' And then I told him that I didn't say that Dessie told me and I didn't say that he didn't, that I was not going to tell him where I had gotten the information.''

The interview had terminated by 3:55 p.m.

Caylor's written report was made a part of the *voir dire* hearing by Wood's counsel. From it it appeared that Caylor had told Wood before the interrogation began that if he intended to lie, he would be much better off to keep his mouth shut. The report showed also that after all the foregoing Wood twice denied having participated in the burglary.[1]

---

[1] The written report introduced by defense counsel contains the following: ''CAYLOR then asked WOOD if he had committed the burglary occurring at the MENLO FARMS MARKET, and he replied no, he hadn't. CAYLOR then asked how WOOD knew so much about it, to which WOOD

Neither defendant testified in the *voir dire* proceedings held outside the jury's presence; or in the presence of the jury.

Wood's statements and admissions to Caylor on August 10 and August 12 were testified to by the latter also in the presence of the jury.

### THE QUESTIONS INVOLVED

Wood's brief concedes that any newly declared rules in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], would not apply in the decision of the instant case (*Johnson* v. *New Jersey,* 384 U.S. 719 [12 L.Ed.2d 882, 86 S.Ct. 1772]; *People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221]), but contends that rules applicable prior to *Miranda* require reversal.

We need not consider to what extent the comprehensive and detailed statement of *Miranda* extends the rules governing in-custody interrogation by police, nor need we view the facts of the instant case in the afterglow of *Miranda.*

■ A finding that a defendant had waived his right to counsel and to remain silent did not, prior to the *Miranda* decision, require an explicit declaration of waiver of the right to counsel and to remain silent. Such a waiver by an accused who first had been fully and fairly advised of those rights might be inferred from circumstances. (*People* v. *Luker,* 63 Cal.2d 464, 473 [47 Cal.Rptr. 209, 407 P.2d 9]; *People* v. *Mitchell,* 244 Cal.App.2d 176 [52 Cal.Rptr. 884]; *People* v. *Lookadoo,* 66 Cal.2d 307, 319-320 [57 Cal.Rptr. 608, 425 P.2d 208]; *People* v. *Sanchez,* 65 Cal.2d 814, 824 [56 Cal.Rptr. 648, 423 P.2d 800]; *People* v. *Thomas,* 65 Cal.2d 698, 705 [56 Cal.Rptr. 305, 423 P.2d 233].)

■ Again, prior to *Miranda,* the taking of a statement from the accused after he had once indicated a desire not to discuss the crime with which he had been charged did not necessarily make the statement inadmissible. (*People* v. *Lookadoo, supra,* 66 Cal.2d 307, 319 [57 Cal.Rptr. 608, 425 P.2d 208].)

Defendant would have us hold that prior to *Miranda* no statement obtained by the police from a suspect in custody after arraignment in the municipal court may be used against

replied, 'There could have been three men, you know.' CAYLOR said that this was possible but it looked like it had to be at least two men and possibly three, but that CAYLOR felt that WOOD was definitely there and had participated in the burglary. WOOD denied this. CAYLOR asked WOOD where he got his information regarding the burglary, and he said that he got his information regarding the burglary from Dessie's crime partner.''

him unless made in the presence of and with the consent of counsel.

We have not been cited to nor have we found any case that has so held.

Defendant's objection combines the elements that (a) the interrogation was post-arraignment in the magistrate's court and (b) in the absence of defendant's attorney. In doing so defendant does not produce what might be compared to a chemical compound, but rather a mechanical mixture. The product of the two elements is no greater than their sum. They are capable of being separated and should be separately considered.

## THE QUESTION OF POST-ARRAIGNMENT
### Interrogation By Police

We deal here only with the factual situation present in the case at bench, not touching the question of post-indictment interrogation.

As to the latter, there is dictum in *People* v. *Brice,* 239 Cal.App.2d 181, 191, 192 [48 Cal.Rptr. 562], that *Massiah* v. *United States,* 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199], outlaws any interrogation that takes place after indictment and the appointment of counsel, unless with the consent of counsel.

On the same subject, prior to Massiah, our Supreme Court had interpreted *People* v. *Di Biasi,* 7 N.Y.2d 544 [166 N.E.2d 825], as not holding that a defendant has an absolute right to representation by counsel during questioning after indictment. (*People* v. *Garner,* 57 Cal.2d 135, 153 [18 Cal.Rptr. 40, 367 P.2d 680].) That interpretation was questioned in the concurring opinion of Justice Traynor (page 159) in concluding that the *Di Biasi* rule should not be adopted in California.

*Garner* held squarely that an in-custody statement made by an accused after arraignment in a magistrate's court is not *per se* inadmissible as in violation of the right to counsel or of the due process clause of the Fourteenth Amendment to the federal Constitution.

## THE QUESTION OF WAIVER OF THE RIGHT TO COUNSEL

In relation to custodial interrogation by police, we consider that the post-*Escobedo* and pre-*Miranda* requirements of the right to counsel and to remain silent apply with equal force before as well as after arraignment in the magistrate's court.

The accused who is without counsel has a right to

counsel equal to that of the accused who has counsel. It follows that if one without counsel may knowingly and understandably waive his right to counsel and to remain silent, such waiver of such rights may be made in a pre-*Miranda* situation in the absence of counsel by an accused who has counsel.[2]

In *People* v. *Price,* 63 Cal.2d 370, 378 [46 Cal.Rptr. 755, 406 P.2d 55], the court said:

"Thus denials of due process in *Massiah, Escobedo,* and *Dorado* are not based on the fact that counsel was not present at the time the suspect made incriminating statements, but on a combination of circumstances, one of which was the absence of counsel."

In *People* v. *Garner, supra,* 57 Cal.2d 135, 149, the court declared:

"The absence of a defendant's counsel at the time he freely and voluntarily makes a confession, without threats, force, duress, or promise of reward, does not of itself render the confession inadmissible and in violation of the due process clause of the federal Constitution."

The concurring opinion in *People* v. *Garner, supra,* 57 Cal.2d 135, 166, states:

"The right to counsel does not imply, however, that a defendant lawfully in custody must be insulated from the police. If the police abuse their right to interrogate, the remedy is to exclude the involuntary confessions or admissions produced."

A knowing and intelligent waiver would now be required in the *Garner* situation. *Garner* held, however, that interrogation is not barred because the defendant at the time has counsel who is absent during the interrogation.

■ We conclude that in a pre-*Miranda* situation there may be a knowing and intelligent waiver of the rights to counsel and to remain silent by an accused in a custodial interrogation post-arraignment in the magistrate's courts, and that such waiver may be made by an accused who is represented by counsel and in the absence of counsel.

In a determination whether the rights to counsel and to remain silent have been knowingly and intelligently waived, we do not rule out consideration of the fact that the accused may have counsel.

---

[2]Whether *Miranda* may be interpreted to hold that an accused represented by counsel may not waive his rights to counsel and to remain silent unless with the consent of counsel we do not attempt to answer.

In that connection, defendant's situation on August 10 is not clear. He had told the police he had spoken to Mr. O'Laughlin before arrest; Caylor had the impression that defendant was then represented by Mr. O'Laughlin. Yet when defendant appeared in the municipal court on August 11 there was no appearance of an attorney; and a different attorney was appointed to represent defendant.

The sole remaining question presented in the case at bench is whether there was a knowing and intelligent waiver of defendant's rights to counsel and to remain silent. In passing upon that question, we start off with these rules:

■ "The burden of laying a foundation for the admission of statements of the defendant and showing compliance with *Dorado* is on the prosecution. . . . and . . . before the trial judge may make the requisite finding of compliance with *Dorado*, the prosecution is required to show that the right to counsel was observed." (*People* v. *Davis,* 66 Cal.2d 175, 180 [57 Cal.Rptr. 130, 424 P.2d 682].)

■ Whether there has been a waiver is primarily a question for the trial judge and his determination thereon should not be disturbed by a reviewing court unless it is palpably erroneous. ( *People* v. *Stafford,* 240 Cal.App.2d 422, 424 [49 Cal.Rptr. 598].)

Since on both August 10 and August 12 defendant was fully and fairly advised of his rights, his position finds no support in cases in which it did not appear that a defendant had been advised of his rights, such as *People* v. *Treloar,* 64 Cal.2d 141 [49 Cal.Rptr. 100, 410 P.2d 620]; *People* v. *Brooks,* 64 Cal.2d 130 [48 Cal.Rptr. 879, 410 P.2d 383]; *People* v. *Ketchel,* 63 Cal.2d 859 [48 Cal.Rptr. 614, 409 P.2d 694]; *People* v. *Skinner,* 235 Cal.App.2d 16 [44 Cal.Rptr. 883]; *People* v. *Price, supra,* 63 Cal.2d 370.

The same is true of cases in which failure to advise a defendant of his rights has been aggravated by disregard or explicit refusal of defendant's request for counsel, such as *People* v. *Anderson,* 63 Cal.2d 351 [46 Cal.Rptr. 763, 406 P.2d 43]; *People* v. *Sigal,* 221 Cal.App.2d 684 [34 Cal.Rptr. 767]; *People* v. *Luker, supra,* 63 Cal.2d 464; *People* v. *Skinner, supra,* 235 Cal.App.2d 16; *People* v. *Buchanan,* 63 Cal.2d 880 [48 Cal.Rptr. 733, 409 P.2d 957]; or in which counsel retained by the family of the accused has been denied access (*People* v. *Donovan,* 13 N.Y.2d 148 [193 N.E.2d 628]).

■ Bearing upon the question whether there was an intelligent waiver of the right to counsel and to remain silent in

the August 12 interview was Wood's statement that he didn't know what to do. That of itself would not compel a holding that he did not later knowingly and intelligently waive his rights to counsel and to remain silent. (*People* v. *Lookadoo, supra,* 66 Cal.2d 307 [57 Cal.Rptr. 608, 425 P.2d 208].)

It would be critical on the question of waiver if Wood, when he made his incriminating admission, had been led to believe either or both of the following: (1) that Whitman had made a confession implicating Wood that could be used in evidence against Wood; (2) that Whitman had made a confession implicating Wood and had agreed to testify for the prosecution.

. Had such belief existed, an attorney could have set Wood right as to (1) ; and could have ascertained whether (2) were true.

However, nothing in the evidence compels a finding that Wood believed either of those things. There was nothing in what Caylor told Wood that need have induced such belief in Wood. Although Wood sought to ascertain if Caylor had obtained his information from Whitman; at the time he suggested that a third person was involved. So far as defendant knew, such third person, if there had been one, might have been the source of Caylor's information.

During the *voir dire* proceeding, in the attempt to exclude defendant's statement no light was thrown upon defendant's reason for agreeing that Caylor's recital was true. Since Caylor's conduct appears to have been free of any trickery or misrepresentation, only defendant was in a position to assert whether he labored under some misapprehension that counsel could have corrected. In saying this we do not relieve the prosecution of the burden of showing the admissibility of the statement and the fact of waiver. That burden was met.

■ ▪ The court's finding that defendant knowingly and intelligently waived his rights to counsel and to remain silent on both August 10 and August 12 is fully supported by the evidence received in the *voir dire* proceedings.

Judgment affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied May 29, 1967, and appellant's petition for a hearing by the Supreme Court was denied July 5, 1967.