[Crim. No. 3153.    Fourth Dist., Div. Two.    Nov. 19, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES OTIS ISBY, Defendant and Appellant.

Ronald R. Heumann, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mark L. Christiansen, Deputy Attorney General, for Plaintiff and Respondent.

McCABE, P. J.—By an information filed in Riverside County on May 1, 1967, defendant was charged with a violation of Penal Code, section 211, (robbery). He was arraigned and entered a plea of not guilty. A jury was waived, and after trial by the court, defendant was found guilty as charged. A motion for a new trial was denied, probation was denied, and defendant was committed to the California Youth Authority. Defendant appeals from the judgment.

At 1 o'clock on the afternoon of January 19, 1967, three persons entered the real estate office of James Rodger, located in the City of Perris, Riverside County. One of these persons was later identified by Mr. Rodger as the defendant, James Otis Isby. The defendant was accompanied by another man and a woman. Mr. Rodger was informed that the defendant and his companions were interested in purchasing some land. Mr. Rodger offered the trio coffee and cigarettes, which they accepted. After conversing for a period of 20-25 minutes, the defendant and the woman stood up. The other man pulled out a gun and ordered Mr. Rodger to put his arms on his chair. The defendant proceeded to secure Mr. Rodger to the chair by applying adhesive tape around his arms and chest. The man with the gun then asked where the office money was kept. Mr. Rodger replied that it was in his wallet, whereupon defendant removed the wallet from Mr. Rodger's left hip pocket. The defendant and the woman took the wallet, containing $290-$300 in currency and some checks, to the car. After removing the cash and checks, they returned the wallet. Meanwhile, the man with the gun searched through the desk and files looking for more cash. After returning the wallet, the defendant joined in the search, however, nothing more of value was found.

Before leaving, the suspects pulled Mr. Rodger into a position where he would be unable to see the license plate of their car. He had observed the side, roof and front of the car as it drove in; he noticed that it was dark green with a sloping hood with dents in the rear fender.

Less than a week after the robbery, Mr. Rodger, who was 65 years of age, was taken to the Riverside sheriff's office where he was shown 15-20 photographs of people believed active in the Perris and Riverside areas. After looking through them, he picked out one of the defendant. None of the other photographs resembled the man with the gun. Later Mr. Rodger was taken to a vehicle wrecking yard which contained approximately 30-35 cars. He identified one vehicle located in the middle of the lot as the car used in the robbery. There was an

in-court identification of defendant by Mr. Rodger. At the trial defendant admitted the car was his.

On April 20, 1967, defendant appeared for arraignment, counsel was appointed, and the preliminary hearing was set for April 27, 1967.[1]

On April 21, 1967, at approximately 9:30 p.m., defendant was questioned in the county jail by Detective Tornberg of the Perris Police Department. Prior to the questioning, he advised defendant by reading a ''Specific Warning and Waiver'' form and had defendant read it. The defendant signed the form and, after being asked if he understood it, indicated that he did and that he would talk to Detective Tornberg. The waiver[2] which was signed by defendant was admitted into evidence.

At the commencement of the interrogation, defendant stated, ''Well, I guess I am caught. I guess you got me on this one; you have got the guy that identified me,'' and ''I don't believe I can beat this one.'' Also, during the conversation which consumed approximately 45 minutes, the detective testified defendant was speaking about half the time. The conversation covered a broad spectrum of subjects little of which concerned the offense with which defendant was charged. The detective testified that at the time of the conversation defend-

---

[1]This fact does not appear in the record, but is based on defense counsel's statement of his personal inspection of the municipal court clerk's minutes, Riverside Judicial District, case No. 6749-F.

[2]The waiver form, in pertinent part, provides:

''SPECIFIC WARNING                                    File No. DR-67-0042

''1.  You have the right to remain silent.
''2.  Anything you say, can, and will be used against you in a court of law.
''3.  You have the right to talk to a lawyer and have him present with you while you are being questioned.
''4.  If you cannot afford to hire a lawyer one will be appointed to represent you before any questioning, if you wish one.

''WAIVER

''5.  Do you understand each of these rights
      I have explained to you?                        (YES)        No
''6.  Having these rights in mind, do you
      wish to talk to us now?                          (YES)        No

''THE FOREGOING WAS READ AND FULLY EXPLAINED

''To  JAMES OTIS ISBY
     _____
     (Print name of person warned)
''at  0930   on   4/21/67
     _____        _____
     (Time)        (Date)
''By:  G. B. TORNBERG               D/3
      _____
      (Signature of officer—I.D. Number)

''THE ABOVE IS TRUE.
''JAMES OTIS ISBY
_____
Signature of person to be questioned.

''WARNING AND WAIVER.''

ant was aware, by means unknown to him, that someone had identified defendant as being at the scene of the robbery. For proper perspective, it may be stated that when defendant took the witness stand, he testified that as early as February 1967, he had heard from a friend he was wanted for robbing a real estate office and taking a man's watch and wallet. Defendant testified that he did not tell the detective who committed the robbery. He admitted, however, that the car identified by Mr. Rodger was his car.

As a witness on his own behalf and to explain the statements which he made to the detective at the start of the interrogation on April 21, defendant testified he was on probation at that time and had received several traffic tickets, at least one of which was under an assumed name, and knew of an outstanding warrant from Riverside County on one of the tickets. He therefore assumed that the detective was referring to these matters and not his participation in a robbery[3]

---

[3]Defendant's testimony was as follows:

''Q. Isn't it a fact, sir, that Officer Tornberg was primarily questioning you about the robbery and when you came to that point in reference to the robbery, you said, 'I guess you've got me on this one.'

''A. I will repeat, one of the reasons Officer Tornberg was talking to me—the man was talking about a lot of things and we were talking about a lot of different things.

''Q. Let us talk about what you and Officer Tornberg said. I want to know whether or not you told him, 'I guess you have got me on this one.'

''A. I made that statement.

''Q. Isn't it a fact that you were referring to this robbery when you said that?

''A. No, sir.

''Q. What were you referring to?

''A. All the other things that he had on me, like I was going to get this violation of probation.

''. . . . . . . . .

''Q. You said I don't have much chance on this one?

''A. That is what I said.

''Q. You were referring to this robbery?

''A. Robbery—the hit and run, what else.

''Q. You figured they had you on the hit and run?

''A. Yes.

''Q. You said in reference to this robbery I guess I can't beat it?

''A. I'm not for sure if I said that or not. I could have said it, so don't get me mixed up on it.

''Q. Pardon me?

''A. I said I could have said it but I'm not for sure I did.

''Q. Why would you have said it?

''A. Because he could be making me mad and other things because I was getting pretty disturbed.

''Q. Officer Tornberg was getting angry at you?

''A. He wasn't getting angry at me.

''Q. Pushing you around?

From the record, including the testimony of defendant, it is clear that prior to and during the conversation with Detective Tornberg, there was no duress, force or violence used or threatened, no fear or apprehension on the part of defendant, and no promises of leniency or immunity given. Defendant's testimony regarding the atmosphere under which it took place obviates any claim of custodial interrogation pressures.

The evidence for the defense was in the nature of an alibi covering the time prior to and during the day of the robbery and a denial of participation in the robbery. The testimony from defendant and other witnesses was that defendant did not drink coffee or smoke cigarettes, did not wear a hat or the type of clothes described by Mr. Rodger, owned only one white shirt which had not been worn for a long time, and was staying in Los Angeles at a friend's home during the period in question.

Mr. and Mrs. John Boyatin testified that defendant stayed at their home in Los Angeles on January 17, 18 and 19, and did not leave until the early a.m. hours of the 20th of January. These witnesses further testified that defendant did not normally wear the type of clothing which Mr. Rodger alleged defendant to be wearing at the time of the robbery, and that defendant did not smoke and did not drink coffee. The defendant's mother testified that she had never seen her son drink coffee or smoke, and that he did not wear hats or sport coats. Two inmates of the Riverside County Jail testified that during the time they had seen the defendant in jail, he did not drink coffee or smoke, but rather gave his cigarettes and coffee to other inmates.

In order to cast doubt on Mr. Rodger's identification of defendant as one of the robbers, defendant called Officer Loyd, the officer who first responded to Mr. Rodger's call that he had been held up. Officer Loyd testified that when he first arrived at the real estate office, Mr. Rodger "was rather excited." He asked Mr. Rodger for a description of the vehicle and the subjects. He was informed that the subject later iden-

"A. No.

"Q. He was just talking to you?

"A. No complaint, he's a nice man, but the things he was telling me was enough to make somebody mad.

"Q. Did you tell him you knew who did it?

"A. Like I say, I didn't tell him who did that robbery. I can't say I did.

"Q. Why did you say, 'I guess I can't beat this one'?

"A. Okay—somebody identified me, two people identified me and with identification of the car, it's hard to beat that—what is the jury going to believe—man, I'm not crazy.''

tified as the defendant was a male Negro approximately 26 to 27 years of age, weighing about 125 to 126 pounds and approximately 5 feet to 5 feet, 3 inches in height. Mr. Rodger had previously described the defendant in court as being about 5 feet, 9 inches or 9½ inches, 124 to 128 pounds and about 20 or 21 years of age. The defendant testified that he was 5 feet 7½ inches, weighed 133 pounds and was 20 years old.

On appeal, defendant raises the following issues: (1) the officer's interrogating him after counsel was appointed and without giving notice to his counsel violated his constitutional right to assistance of counsel; (2) the identification testimony of Mr. Rodger should be excluded because the court erred and deprived defendant of due process when it did not inquire about the presence of defendant's counsel at the showup, and Mr. Rodger's identification of defendant at the showup and the possible "tainting" of his subsequent in-court identification; and (3) excluding the illegally obtained statement testified to by Detective Tornberg and the possible tainted identification of Mr. Rodger, there is insufficient evidence to support the conviction.

█ Initially, defendant contends that the admission of his damaging statements to Detective Tornberg constitutes reversible error on the authority of *Massiah* v. *United States,* 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199], and *People* v. *Brice,* 239 Cal.App.2d 181 [48 Cal.Rptr. 562], because it appears that Tornberg, in the absence of defendant's counsel, was attempting to elicit incriminating statements from him. The attorney general concedes that defendant was in custody and that the interrogation was conducted for the purpose of eliciting incriminating statements, but contends that defendant waived his right to have counsel present.

*People* v. *Brice, supra,* is the first case in California to consider the impact of the decision of the United States Supreme Court in *Massiah* v. *United States, supra,* as it applies to the admissibility of incriminating statements secured after indictment in the absence of defendant's counsel. The court in *Brice* quotes from the *Massiah* opinion itself, the New York decisions upon which the court in *Massiah* relied and several law review commentaries appraising the essence of the *Massiah* holding and concludes: (at p. 191) "As we read *Massiah*, it articulates and applies this central principle: that incriminating statements made by a defendant after he has been formally charged by indictment or informa-

tion and while he is in custody are inadmissible where they have been *deliberately elicited* from him by enforcement agents or the police in the absence of his counsel.'' (Original Italics).

The New York rule, established in a long line of cases, including *People* v. *Vella,* 21 N.Y.2d 249 [234 N.E.2d 422]; *People* v. *Donovan,* 13 N.Y.2d 148 [193 N.E.2d 628]; *People* v. *Rodriguez,* 11 N.Y.2d 279 [183 N.E.2d 651]; *People* v. *Meyer,* 11 N.Y.2d 162 [182 N.E.2d 103]; *People* v. *Waterman,* 9 N.Y.2d 561 [175 N.E.2d 445, 90 A.L.R.2d 726]; *People* v. *Di Biasi,* 7 N.Y.2d 544 [166 N.E.2d 825], is that police interrogation, after defendant has counsel and in the absence of his counsel, is impermissible after the criminal proceeding has been commenced, whether by grand jury indictment or by a charge placed before a magistrate, despite the fact that the resulting confession or admission was voluntary and uncoerced, (see *People* v. *Donovan, supra*) or that defendant ''waived'' his right to counsel (*People* v. *Vella, supra;* see 90 A.L.R.2d 732 et seq.). The reasoning behind the rule is that in New York, as in California, (see Cal.Const., art. I, § 13; Pen. Code, §§ 858, 987) a defendant has a right to the assistance of counsel at every stage of a criminal cause (N.Y. Const., art. I, § 6; N.Y. Code Crim. Proc., §§ 8, 188, 308, 699) and since the commencement of criminal proceedings indicates '' [t]he People have legally sufficient evidence of the defendant's guilt of the crime charged (Code Crim. Proc., § 251), the necessities of appropriate police investigation 'to solve a crime, or even to absolve a suspect' cannot be urged as justification for any subsequent questioning of the defendant [citation]. Any secret interrogation of the defendant, from and after the finding of an indictment, without the protection afforded by the presence of counsel, contravenes the basic dictates of fairness in the conduct of criminal causes and the fundamental rights of persons charged with crime.'' (*People* v. *Waterman, supra,* 9 N.Y.2d 561, 565 [175 N.E.2d 445, 447-448]; see also *Massiah* v. *United States, supra,* 377 U.S. 201, 205 [12 L.Ed.2d 246, 250]; *People* v. *Brice, supra,* 239 Cal. App.2d 181, 190.)

Other jurisdictions have recognized and followed the rule of *Massiah* in circumstances closely analogous to those before us.

In *Commonwealth* v. *McCarthy,* 348 Mass. 7 [200 N.E.2d 264, 266], the Supreme Judicial Court of Massachusetts states: ''In the *Massiah* case the defendant did not know that

his remarks to a confederate who was cooperating with the authorities were being overheard. But we do not understand the holding to turn on that point. The court in general terms stated a rule *against interrogation after indictment in the absence of counsel. This is now a constitutional principle applicable to these cases.*'' (Italics supplied.)

In *State* v. *Witt* (Mo.) 422 S.W.2d 304, 306, the Supreme Court of Missouri defined the issue before it as follows: ''whether the second interrogation of Witt and the introduction in evidence of the incriminating admissions obtained on that occasion by the prosecuting attorney . . . in the absence of and without notice to his attorney, Mr. Snodgrass, infringed his constitutional rights as a matter of law and, therefore, demands the granting of a new trial.'' The question posed was answered in the affirmative and the judgment was reversed.

In a recent decision of the Supreme Court of Appeals of Virginia, it was held: ''Counsel for defendant stated at the bar of this court and in his brief that he represented Cooper at the preliminary hearing and during the grand jury proceedings; that he was not present when the tape recording was made and had no knowledge that it was to be made; that he was not present when his client, Cooper, was taken from jail after he was indicted and questioned by Mundy relative to the contents of the tape recording, and that he was not notified that such examination would take place. The record does not contradict these statements of counsel and in some respects it confirms them.

''It is true that Cooper was advised of his rights before he was examined and that no threats or inducements were made to him. It is also true that the record does not show that Cooper asked to consult with counsel, but the fact remains that he was not experienced in criminal procedure, his intellectual endowment was 'at the lower limits of normal', and his ability to function under stress was 'in a corresponding range.' He had been indicted for a capital offense and was subjected to a lengthy examination by a skillful police investigator who was seeking to obtain an admission or confession. The interrogation was no longer investigatory; it was accusatory. It cannot be successfully denied that the defendant needed the assistance of counsel during this stage of the proceeding.'' (*Cooper* v. *Commonwealth,* 205 Va. 883 [140 S.E. 2d 688 at p. 694].)

In *State* v. *Herman,* 3 Ariz.App. 323 [414 P.2d 172 at pp.

174-175-176], the Court of Appeals of Arizona states: "Concerning the admissibility of statements obtained by the officers from the defendant outside the presence of defendant's attorney during a time when the defendant was represented by counsel, it should be remembered that in the instant case, we are not concerned with the waiver by the defendant of the right to obtain the assistance of counsel, but with waiver of the assistance and advice of counsel who was at the time representing the defendant. . . .

"In the instant case, the police officers knew that the defendant was represented by counsel. The defendant had been arrested and defendant's attorney had appeared before the Justice of the Peace to set bond and the date of the preliminary examination. We therefore hold that the statements (and the fruits thereof) obtained from the defendant after arrest and arraignment before the Justice of the Peace and while he was represented by counsel, are inadmissible because said statements were obtained outside the presence of defendant's attorney. To allow interrogation of an accused outside the presence of his attorney is as much a denial of the right of counsel as the refusal to allow an accused to obtain the services of an attorney. Where, as here, the defendant had an attorney of record from the time of the arraignment in the Justice Court, the defendant may not be questioned outside the presence of counsel without counsel's permission. [Citation.]

"Since we rule here that the statements are inadmissible as a matter of law we do not need to consider what is an 'intelligent' waiver."

Other jurisdictions reaching similar results include *State* v. *Longmore,* 178 Neb. 509 [134 N.W.2d 66]; *Williams* v. *State* (Fla.App.) 188 So.2d 320; and *State* v. *Gallagher,* 97 Ariz. 1 [396 P.2d 241].

As early as *Powell* v. *Alabama,* 287 U.S. 45 [77 L.Ed. 158, 53 S.Ct. 55], it was recognized that the period from arraignment to trial was "perhaps the most critical period of the proceedings. . .," *id.* at p. 57 [77 L.Ed. at p. 164, 53 S.Ct. at p. 59], during which the accused "requires the guiding hand of counsel. . . ," *id.* at p. 69 [77 L.Ed. at p. 170, 53 S.Ct. at p. 64], if the guarantee is not to prove an empty right. The principle of *Powell* v. *Alabama, supra,* was recently reiterated in *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], wherein the United States Supreme Court held that a post-indictment lineup was a critical stage of prosecu-

tion which entitled defendant to the aid of counsel. The court noted that it is central to the principles established in *Powell* v. *Alabama, supra,* and subsequent cases, "that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *Id.* at p. 226 [18 L.Ed.2d at p. 1157, 81 S.Ct. at p. 1932]. This principle reflects the realization that today's law enforcement machinery involves critical confrontations between the accused and the prosecution at pretrial proceedings where the results might well settle the accused's fate and reduce the trial itself to a mere formality.

To allow interrogation of an accused after the criminal proceedings have commenced, in the absence of the accused's counsel, would severely impair the Sixth Amendment guarantee providing that: "'In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel *for his defense.* (Emphasis supplied.)' " The plain meaning of this guarantee unquestionably encompasses counsel's assistance whenever necessary to assure a meaningful "defence." (*United States* v. *Wade, supra,* 388 U.S. 218, 225 [18 L.Ed.2d 1149, 1156, 87 S.Ct. 1926, 1931].)

We recognize that *Miranda* v. *Arizona,* 384 U.S. 436, 478-479 [16 L.Ed.2d 694, 725-727, 86 S.Ct. 1602, 10 A.L.R.3d 974], permits in-custodial interrogation of an accused without the presence of counsel where proper advisements have been given and the accused knowingly and intelligently waives his rights to be represented by counsel and agrees to answer questions or make a statement.

*People* v. *Wood,* 250 Cal.App.2d 911 [59 Cal.Rptr. 317], decided before the trial of the case at bench, concerned the admissibility into evidence of a pre-*Miranda* incriminating statement obtained after the criminal charge had been filed, arraignment, and in the absence of his counsel. The interrogation was prior to *Miranda* v. *Arizona, supra.* As we read *Wood,* the reviewing court held that in a pre-*Miranda* situation, and although the incriminating statement was elicited after arraignment on the criminal charge, the defendant could waive the right to the presence of counsel at the interrogation in like manner as he could waive the right to counsel before the criminal charge was filed and arraignment had thereon. The court in *Wood* concluded that there was an intelligent and understanding waiver in that case. However, from the

opinion it is not clear whether the incriminating statement was an admission or confession. The *Wood* opinion considers *People* v. *Garner,* 57 Cal.2d 135 [18 Cal.Rptr. 40, 367 P.2d 680] ; *People* v. *Brice, supra,* 239 Cal.App.2d 181; *Massiah* v. *United States, supra,* 377 U.S. 201.

Under the facts of the case at bench we do not find *Garner* dispositive or helpful, for the conversation in which the incriminatory statement was made in *Garner* was instigated by the defendant. In *Garner,* there was no interrogation initiated by law enforcement officers for the purpose of eliciting incriminating statements.

In *Brice* (a pre-*Wood* case) the appellate court held that incriminating statements made by a defendant after he has been formally charged by indictment or information and while he is in custody are inadmissible where they have been *deliberately elicited* from him by enforcement agents or the police in the absence of his counsel. *Brice* is factually comparable to *Wood,* in that: the interrogation occurred after the criminal charge had been filed; counsel was appointed; arraignment had on the criminal charge, (see footnote 7, p. 185) ; and the interrogation was instigated by the law enforcement officer. The incriminatory statement so elicited was an admission. In *Brice* the appellate court did not have the factual situation wherein defendant was advised of any constitutional rights whether under *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] ; *Miranda* v. *Arizona, supra*; or *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], nor whether defendant understandingly and intelligently waived this right. *Massiah* v. *United States, supra,* likewise does not encompass an advisement of rights or waiver problem. *Massiah* factually concerned itself only with a post-indictment problem.

It must be concluded from our reading of *Massiah* and *Miranda* that the Supreme Court has distinguished two distinct constitutionally proportioned rights. The first right is that an accused must be advised of his right to counsel when the accusatory stage of the criminal process has been reached, and the second right is that after a criminal charge has been filed against a defendant and he has counsel, he may not be subjected to an interrogation instigated by law enforcement officers for the purpose of eliciting incriminatory statements without effective aid of his counsel. In the case at bench, the criminal charge had been filed, defendant arraigned and counsel appointed to represent him. From this factual statement it can be concluded that defendant had been advised of his right

to counsel and he had elected to be represented by counsel rather than represent himself. Thereafter defendant was entitled to the effective aid of counsel at any interrogation instigated by the law enforcement officers. The incriminatory statements herein were obtained without such aid and their admission in evidence was constitutionally proportioned error.

The remaining question as to the admission of the incriminatory statement is the effect of the error on the judgment. The introduction of a confession obtained from a defendant in violation of constitutional guarantees is prejudicial per se and compels reversal regardless of other evidence of guilt. (*People* v. *Fioritto,* 68 Cal.2d 715, 721 [68 Cal.Rptr. 817, 441 P.2d 625] ; *People* v. *Powell,* 67 Cal.2d 32, 51-52 [59 Cal.Rptr. 817, 429 P.2d 137] ; *Jackson* v. *Denno,* 378 U.S. 368, 376 [12 L.Ed. 2d 908, 915, 84 S.Ct. 1774, 1 A.L.R.3d 1205].) Since Isby's statement does *not* constitute a confession, and therefore is not prejudicial per se (*People* v. *Dorado, supra,* 62 Cal.2d 338 ; *People* v. *Brice, supra,* 239 Cal.App.2d 181; *People* v. *Cooper,* 234 Cal.App.2d 587, 604 [44 Cal.Rptr. 483]), we must determine whether, upon an examination of the entire record, we can declare our belief beyond a reasonable doubt that the error did not contribute to the trial court's finding of guilt. (*Chapman* v. *California,* 386 U.S. 18, 22-24 [17 L.Ed.2d 705, 709, 710, 87 S.Ct. 824] ; *People* v. *Matthews,* 264 Cal.App.2d 557, 570 [70 Cal.Rptr. 756] ; *People* v. *Brice, supra.*)

We conclude that the introduction into evidence of the admission does not require us to reverse the judgment. Defendant and the woman and other man who were present in Mr. Rodger's office for some 20-25 minutes were of a distinctive ethnic race; they were not disguised in any way; they were in clear view of Mr. Rodger; later, Mr. Rodger aided in the drawing of a composite picture of defendant; without aid, assistance or guidance, Mr. Rodger selected from a series of photographs the photograph of defendant all of which occurred before defendant's "lineup" or "showup;" there was an in-court identification, the car used by the participants in the robbery was identified by Mr. Rodger. There was evidence the car so identified by Mr. Rodger was owned by defendant. Despite the identification, and while on the witness stand, defendant gave no explanation as to how his vehicle could have been at the scene of the crime.

Defendant contends the "showup" identification was violative of constitutional guarantees and that it rendered Mr.

Rodger's in-court identification inadmissible. We find no merit to this contention. No objection was interposed in the trial court to the evidence to bring such matter to the attention of the trial court. More compelling is that the ''showup'' in the case at bench was before *United States* v. *Wade, supra,* 388 U.S. 218; and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], which determined a defendant is entitled to the presence of counsel at the showup, but this rule has prospective application only. (*People* v. *Feggans,* 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21].) At the trial defendant produced no evidence, claim or made any offer of proof that there was any unfairness in the showup procedure.

Judgment affirmed.

Kerrigan, J., and Tamura, J., concurred.