[Civ. No. 29371. First Dist., Div. Three. May 21, 1971.]

WILLIAM TIDWELL, Petitioner, v.
THE SUPERIOR COURT OF HUMBOLDT COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Mathews, Traverse & McKittrick and Joseph B. Harvey for Petitioner.

No appearance for Respondent.

Evelle J. Younger, Attorney General, Doris H. Maier, Assistant Attorney General, Edsel W. Haws and Jack R. Winkler, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

**CALDECOTT, J.**—Petitioner William Tidwell seeks review by writ of mandate of the denial of Penal Code section 1538.5 motions to suppress. He and his brother Robert were indicted in September 1967 on three separate counts of murder. Petitioner was found guilty of each charge by a jury and was sentenced to death. The California Supreme Court reversed the judgments for refusal to grant the defense's motion for change of venue. (*People* v. *Tidwell,* 3 Cal.3d 62 [89 Cal.Rptr. 44, 473 P.2d 748].) Venue was then changed from Lassen County to Humboldt County.

On August 14, 1967, Deputy Sheriffs Lake and Austin went to the residence of William and Robert Tidwell to question them concerning certain activities. No one was at home, so they talked briefly to the occupant of the adjoining apartment. She informed them that petitioner's apartment was unusually furnished for two young men, and that they slept a great deal during the day and were out during the night. The officers testified that they had occasion to observe the residence during the following two days and, seeing no car in the driveway, made no effort to call at the residence. On August 17 a car was seen in the driveway and in the late afternoon of that day, Officers Lake and Austin again called at the apartment. Officer Lake knocked at the door. It was answered by Robert Tidwell. The officers identified themselves as police officers, asked if William and Robert

Tidwell lived there, and the reply was "yes." There is conflict in the testimony as to the next question and answer. It appears, though, that Officer Lake asked if they could come in and talk to the brothers, and the reply was "We'll come out." Officer Lake then said "It's awfully hot, can we come in?" at which point Robert turned slightly, as though speaking to someone in the room. He turned back toward the door, opened it wider and "stepped back." There were no spoken words at this point. The officers entered and talked to defendant and his brother about a prowling report and other matters including possession of guns. In the course of the discussion of guns one or both of the brothers went into a bedroom where they were followed by the officers, who were shown certain guns. After further conversation William indicated that he did not think the officers should proceed without a search warrant, and should not come back without a warrant. Both officers then left.

Having observed the furnishings of the apartment, they returned to their office and checked burglary records, which confirmed, so far as the officers were concerned, that the furniture was from a burglarized building. They then proceeded to give the information to the district attorney, who personally typed the affidavit and search warrant. These contained two errors which are discussed below. By the time the affidavit and warrant were taken to the magistrate, who signed the warrant, it was "after dark." The officers drove back to the jail and picked up petitioner, who along with Robert had been arrested on the burglary charge, then proceeded to the apartment for the search.

In the course of the search other articles were seen (some of them were in plain sight and had, in fact, been seen during the earlier visit of August 17). Some of these seemed to match items listed as missing, or possibly missing, in homicides which had occurred in Lassen County earlier in the month. Another search warrant was obtained and the apartment was again searched at around 4:30 a.m. on August 19, and those items taken as a result of the second search.

On August 20 Officer Hoke of the Butte County sheriff's office was in Shasta County and was informed that they were looking for a gun and some boots as possible evidence in the Lassen County homicide. He was informed also that the Tidwell brothers were suspects and were then in custody. Officer Hoke knew petitioner's mother lived in Butte County and that, in fact, a younger brother (Delbert) was then in the Butte County Juvenile Hall on some other charge. Officer Hoke talked to Delbert in the juvenile hall and, accompanied by him, went to the residence of Mrs. McGee (petitioner's mother). Upon arriving at her residence, he identified himself and informed her that petitioner and his brother, Robert, were

suspects in the homicide and that he was searching for a weapon or weapons. He asked if he could come in and look for them. He testified that Mrs. McGee replied, "certainly."

He entered, searched, and found no guns. It was his testimony that Mrs. McGee and Delbert aided in the search. He then asked Mrs. McGee if she had any of petitioner's clothes. She indicated that she did have some boots, and sent one of the children to get them. She gave them to the officer, who gave her a receipt and kept the boots. Delbert testified that neither he nor his mother cooperated in the search, and that the officer found the boots.

Captain McCarthy, of the Shasta County sheriff's office, testified that on August 25 he was asked by Robert Tidwell to pack in boxes the things still in the apartment and give them to Mrs. McGee. At that time he told Robert that he would do this, but that he would be checking for stolen property, to which Robert replied, there was no more stolen property. Although Robert was represented by counsel at the time, counsel was not notified of the conversation.

McCarthy proceeded to the apartment and packed the belongings of Robert and petitioner. In the course of packing, a pair of socks, some shorts, an undershirt and a picture were found and retained which could aid in connecting the brothers to the homicides. The rest of the property was given to Mrs. McGee.

Captain McCarthy testified further that on September 1 he asked petitioner, who was in the Shasta County jail, if he could search petitioner's car which had been impounded. Petitioner allegedly said "Go ahead and search. You will not find any evidence." A search uncovered several other items useful in the homicide trial. The trial court found that at this time defendant was represented by an attorney in relation to the burglary charge, but he was not notified and was not present at the time of the request for permission to search or at the search.

*The August 17 Search Without a Warrant*

Petitioner argues the state has not sustained its burden of proving that his brother, Robert, knowingly and voluntarily consented to the entrance of the officers without a warrant on August 17. Mere submission to authority is not a valid consent.

The question of consent is one of fact. (*People* v. *Smith*, 63 Cal.2d 779, 798 [48 Cal.Rptr. 382, 409 P.2d 222].) The trial court found that the evidence showed consent even though it was not indicated with words.

This finding is amply supported. Robert knew his right to refuse entry. At first he did so refuse; when asked again he seemed to speak with someone in the room. His subsequent consent, therefore, was not a mere involuntary reaction, but rather a considered decision. Also, petitioner was present and it is clear he knew his right to refuse since he later halted the investigation due to the lack of a search warrant.

■ The initial refusal did not vitiate the subsequent consent. After the refusal the officers gave reason for their desire to come inside—the heat. The trial court noted that this reason was not a ruse for entry. The circumstances indicate the subsequent consent was not the result of undue pressure.

### The August 17 Search Pursuant to a Warrant
### A Night Search

■ Petitioner contends the search was invalid because conducted at night without authorization. It is not clear from the evidence whether the search was conducted at night. Sergeant Lake testified that he believed the officers arrived at the residence at 8 o'clock or 8:30 p.m. He testified that at the time they got the warrant it was "after dark." However, the trial judge took judicial notice in his written ruling on the motion that the time of sunset on that day was 8:12 p.m., and therefore he concluded the search was during the day. Even if the search were at night it would not be illegal.

The search warrant stated: "You are therefore commanded, in the daytime (or at any time of the day or night) to make immediate search of the premises. . . ." Penal Code section 1533 states: "On a showing of good cause therefor, the magistrate may, in his discretion, insert a direction in the warrant that it may be served at any time of the day or night; in the absence of such a direction, the warrant may be served only in the daytime." The magistrate made no indication of the exercise of his discretion. Petitioner asserts this failure precluded lawful execution of the warrant at night, citing *Powelson* v. *Superior Court,* 9 Cal.App.3d 357 [88 Cal. Rptr. 8]; *Call* v. *Superior Court,* 266 Cal.App.2d 163 [71 Cal.Rptr. 546], and *People* v. *Mills,* 251 Cal.App.2d 420 [59 Cal.Rptr. 489]. As stated in *United States* v. *Ravich,* 421 F.2d 1196 at p. 1201: "The purpose of the requirement of a search warrant, as the Supreme Court has repeatedly reminded us, is to 'assure that the judgment of a disinterested judicial officer will interpose itself between the police and the citizenry,' Spinelli v. United States, 393 U.S. 410 [419] . . . and [the judge] . . . accomplished this purpose in full measure. The reason for requiring specific authorization of night searches and for the somewhat higher standard of proof for them . . ., namely, the peculiar abrasiveness of official intrusions at such periods,

. . . is wholly inapplicable to two unoccupied motel rooms. . . ." In *Ravich* the warrants were valid authorizations for daytime searches. The showing met probative standards for authorizing nighttime search and the warrants lacked specific direction that they might be served at any time, as required by state law. The failure of the officers to wait until daylight to conduct the search of rooms known to be unoccupied was harmless error and did not require the exclusion of the evidence seized.

Furthermore, as stated in Civil Code section 3510: "When the reason of a rule ceases, so should the rule itself."

In the present case the occupants of the apartment, William and Robert Tidwell, were both in custody, as the police knew. Also the police officers had conversed with a neighbor in the apartment house, and had observed the apartment for several days prior to the first encounter with the Tidwells, and they saw no indication of any other person using the apartment. Thus there was no one to be protected by the code section (Pen. Code, § 1533), and as held in *Ravich,* the reason for it was wholly inapplicable to an unoccupied apartment. Under these circumstances the evidence need not be excluded.

### The Mistaken Address

The address of the premises to be searched which appears on the face of the warrant is "1360 Laurel Avenue, Redding, California." Petitioner's apartment was located at 1860 Laurel Avenue in Redding. Petitioner argues that the magistrate did not authorize a search of his apartment, and that the warrant could not be construed to permit such a search since it violates Penal Code section 1525 by not particularly stating the premises to be searched.

The evidence demonstrated that there was only one Laurel Avenue in Redding, it was one block long, and all addresses on the block are in the 1800's. "It is enough if the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended." (*Steele* v. *United States,* 267 U.S. 498, 503 [69 L.Ed. 757, 760, 45 S.Ct. 414].) A mistaken address does not invalidate a warrant per se. (*United States* v. *Goodman* (N.D.Ind. 1970) 312 F.Supp. 556. See *State* v. *Reynolds* (1970) 11 Ariz.App. 532 [466 P.2d 405, 409].)

### The Mistaken Date

Sergeant Lake's affidavit for the warrant of August 17, 1967, indicated that he had seen the items to be seized during an investigation of an incident which took place on "August 26, 1967." The incident actually

occurred on July 26. Petitioner argues that since the date given for the incident had not yet arrived the affidavit could not convey to the magistrate probable cause for the search. Since the heart of the affidavit was that the officer had seen certain items during an investigation, and since the incorrect date was in no way relevant to establishing probable cause, the error does not preclude establishment of probable cause. (Cf. *Frazzini* v. *Superior Court,* 7 Cal.App.3d 1005 [87 Cal.Rptr. 32].)

## The August 19 Search

The issue of a night search is involved here also. However, as in the August 17 search the two Tidwells were still incarcerated and the occupancy of the apartment was unchanged. The rule of *United States* v. *Ravich, supra,* applies as equally to this search as to that of August 17 and thus any error is harmless and does not require the exclusion of the evidence seized.

## The Warrantless Search of the McGee Residence on August 22

The police spoke to petitioner's younger brother, Delbert, while he was in the custody of the juvenile authorities and found out that there were hiding places in his mother's house in which petitioner or his brother, Robert, may have hidden guns. Delbert took the police to the house and with, what the trial court found was, the consent of the mother, they searched the home without a warrant. Although they did not find any guns, they did find some boots which were connected with the homicides.

Petitioner contends that since Delbert was not afforded several of the rights he was entitled to under *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], the information the police received leading them to the search and the information and evidence they uncovered during the search should be suppressed. This argument fails in two respects. First, *People* v. *Varnum,* 66 Cal.2d 808 [59 Cal.Rptr. 108, 427 P.2d 772], held that one person cannot raise the violation of another's Fifth and Sixth Amendment rights as long as the evidence or information is not obtained by use of physically or psychologically coercive tactics. (*Id.* at pp. 812-813.) Second, the information obtained from Delbert, even if obtained wrongfully, would not taint a search of his mother's home conducted with the consent of the mother. Although petitioner challenges the finding that she consented, this finding is well supported by the evidence.

## The Warrantless Search of Petitioner's Apartment on August 25

According to the police, Robert requested that they pack up his and his brother's belongings in their apartment and release them to his mother.

In so doing, evidence connected with the homicides was discovered. Petitioner asserts that the conversation with Robert which led to the request was unlawful since Robert was represented by counsel, yet counsel was not notified of the meeting. Again, however, petitioner cannot raise a violation of his brother's Sixth Amendment rights. (*People* v. *Varnum, supra.*)

■ There is, however, a question as to the proper scope of the search justified by Robert's consent. There is some conflict in the cases concerning the valid scope of a cotenant's consent. *People* v. *Shelton,* 60 Cal.2d 740 [36 Cal.Rptr. 433, 388 P.2d 665]; *Tompkins* v. *Superior Court,* 59 Cal.2d 65 [27 Cal.Rptr. 889, 378 P.2d 113], and *Duke* v. *Superior Court,* 1 Cal.3d 314 [82 Cal.Rptr. 348, 461 P.2d 628], have limited the right of an absent cotenant to consent to the invasion of his cotenant's privacy when the latter cotenant is present. *People* v. *Smith,* 63 Cal.2d 779, 799 [48 Cal.Rptr. 382, 409 P.2d 222], distinguished the above cases when the second cotenant "was in full flight and had virtually abandoned the premises." The case at bar falls somewhere between these two lines of authority since petitioner was in custody and was not present at the time of the search, but had not abandoned his apartment. (See *Vandenberg* v. *Superior Court,* 8 Cal. App.3d 1048 [87 Cal.Rptr. 876].) As there was nothing to indicate William was entitled to exclusive possession, once the police were in the apartment, with consent, they had the right to search any part of the apartment. (*People* v. *Curley,* 12 Cal.App.3d 732 [90 Cal.Rptr. 783]; *People* v. *Linke,* 265 Cal.App.2d 297, 317 [71 Cal.Rptr. 371].)

### The Warrantless Search of Petitioner's Vehicle on September 1

■ On September 1, 1967, petitioner was asked by Jerry McCarthy, Shasta County detective captain, if he would allow a search of his car. Petitioner replied: "Go ahead and search. You will not find any evidence." At the time, petitioner was being held in the Shasta County jail. He had been arraigned on burglary charges in the justice court on August 23. At that time he was represented by appointed counsel. Petitioner now claims that his consent was ineffective since he was represented by counsel, yet his counsel was not informed that petitioner was to be questioned, and was not informed of his consent. Indeed, *People* v. *Isby,* 267 Cal.App.2d 484, 494-495 [73 Cal.Rptr. 294], and *People* v. *Valencia,* 267 Cal.App.2d 620, 626-627 [73 Cal.Rptr. 303], hold that once counsel is appointed the police may not initiate interrogation of the defendant without notifying counsel, and the exclusionary policy applies to any evidence or information obtained in violation of this rule.

Petitioner had previously been arraigned and counsel appointed on the burglary charge. The burglary charge was apparently dismissed at the

request of the district attorney on the same day as the search of the car, although the justice court record is not clear on this point, and it might have been August 23. The trial court found that at the time petitioner consented to the search he was not represented by counsel on the homicide charges but was still represented on the burglary charges.

Respondent contends that "Any representation of petitioner in the Justice Court for purposes of preliminary examination would have terminated with the order of commitment. (See Penal Code sections 859, 872, 888.) Trial counsel for indigent felony defendants is assigned by the superior court. . . ." The Penal Code sections cited by respondent are not authority for respondent's statement. If respondent were correct this would mean that an indigent defendant, while in custody, would not be represented by counsel from the conclusion of his preliminary hearing until he appeared, several days later, in the superior court for arraignment and reappointment of counsel. This would be contrary to *People* v. *Isby, supra,* 267 Cal. App.2d 484 at pages 494-495, which stated: "In the case at bench, the criminal charge had been filed, defendant arraigned and counsel appointed to represent him. . . . Thereafter defendant was entitled to the effective aid of counsel at any interrogation instigated by the law enforcement officers."

Respondent asserts that the doctrine of *Isby* and *Valencia* only applies to statements elicited and not to consents given. This distinction is very thin considering the incriminating effect a consent to search may have. The reasoning of *Isby* and *Valencia,* which protects defendants' right to effective aid of counsel, applies equally to a consent given at the instigation of the police.

A writ of mandate will issue directing suppression of the evidence seized on September 1, 1967, during the search of petitioner's automobile. In all other respects the writ is denied.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied June 18, 1971, and petitioner's application for a hearing by the Supreme Court was denied July 28, 1971.