[No. A029505. First Dist., Div. Three. Mar. 20, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
WALTER J. RANKINS, Defendant and Appellant.

COUNSEL

Douglas R. Schmidt, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**WHITE, P. J.**—Defendant and appellant appeals from the judgment of the Superior Court of San Francisco County entered after a jury found him guilty of a violation of Penal Code section 288, subdivision (b) (lewd act upon a child under 14 years by force), a violation of Penal Code section 288a, subdivision (c) (forcible oral copulation), a violation of Penal Code section 261, subdivision (2) (forcible rape), and a violation of Penal Code sections 664 and 261 (attempted rape). Appellant contends that the trial court erred in admitting appellant's pretrial statement because it was taken in violation of an agreement between the defense counsel (O'Connor) and the deputy district attorney (Eto).

For the purpose of resolving the issue presented in this case, it is not necessary to set out the facts surrounding the convictions.

Upon his surrendering to the police on June 22, 1983, appellant was advised of his *Miranda* rights and waived them and gave a statement which essentially denied the facts which led to the charges. Before trial it was agreed between defense counsel and the deputy district attorney that appellant would voluntarily submit to a polygraph examination. The deputy district attorney suggested the test (apparently not for the purposes of using it as evidence), but to satisfy in her own mind as to whether or not to proceed

with the case. In other words, if appellant passed the test, the prosecution would consider dismissing the case. Defense counsel stated that it was "stipulated in advance that no statements or questioning would take place of the defendant outside the operation of the polygraph test itself, . . ."

Before appellant was given the test, he was given his *Miranda* rights which he waived by signing a consent form. After the test was conducted, appellant was asked to explain what appeared to the technician to be untruthful statements. Prior to trial appellant made a motion to exclude the statements he made to the officer conducting the test when the officer asked appellant to explain what appeared to be untruthful statements. The trial court denied the motion.

Appellant argues that the "admission of these statements violated appellant's constitutional right to the assistance of counsel. Ever since *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199] it has been established that the Sixth Amendment of the U.S. Constitution forbids the use in a criminal trial of statements deliberately elicited by law enforcement officers from a defendant, after he has been formally charged by indictment or information, in the absence of his counsel (*People* v. *Isby* (1968) 267 Cal.App.2d 484, 489 [73 Cal.Rptr. 294]; *People* v. *Brice* (1966) 239 Cal.App.2d 181, 191 [48 Cal.Rptr. 562]). This is the rule whether or not the statements of the defendant are voluntary, and whether or not he has waived his Fifth Amendment *Miranda* rights (*People* v. *Isby, supra,* 267 Cal.App.2d at 489-495). The rule applies even to a defendant who is not in custody but is free on bail (*Massiah* v. *United States, supra*). It is based on the rationale that once a defendant has been formally charged there is no necessity for further police questioning to solve the crime or absolve the suspect, and extrajudicial questioning in the absence of his attorney denies the accused the effective assistance of counsel to which he is entitled (*Massiah* v. *United States, supra,* 377 U.S. 201, 205 [12 L.Ed.2d 246, 250]; *People* v. *Isby, supra,* 267 Cal.App.2d 484, 490-494)."

In *Wyrick* v. *Fields* (1982) 459 U.S. 42 [74 L.Ed.2d 214, 103 S.Ct. 394], the United States Supreme Court approved an interrogation following a defendant's requested polygraph examination. In a Fifth Amendment context, the *Wyrick* court states that when a suspect, who has an attorney, makes a voluntary, knowing, and intelligent waiver of the right to have counsel present at the polygraph examination, and it was clear that defendant understood that right and was aware of his power to stop questioning at any time or speak to his attorney at any time, there was no requirement that police again advise him of his rights before questioning him at the same interrogation about the results of the polygraph. ■ Although in the present case,

appellant did not "request" the test but "volunteered," nonetheless, the *Wyrick* rule is applicable in that appellant was read his *Miranda* rights and told the officer he understood them. At that point, appellant made a voluntary and knowing relinquishment of his Sixth Amendment right to have counsel present at the questioning immediately following the polygraph test.

Appellant next contends that this case is distinguishable from *Wyrick* because in *Wyrick* there had been no stipulation between counsel forbidding any interrogation following the polygraph examination. Actually, as presented to the trial court, the stipulation was that "no questioning of the defendant would go on outside the polygraph test. . . ."

It is this court's position that the stipulation was in fact honored because the questioning which took place immediately after the machine was turned off was part of the polygraph test that appellant had agreed to take. The following language from *Wyrick* supports this position: "Disconnecting the polygraph equipment effectuated no significant change in the character of the interrogation. The CID agent could have informed Fields during the examination that his answers indicated deceit; asking Fields, after the equipment was disconnected, why the answers were bothering him was not any more coercive. The Court of Appeals stated that there was no indication that Fields or his lawyer anticipated that Fields would be asked questions after the examination. But it would have been unreasonable for Fields and his attorneys to assume that Fields would not be informed of the polygraph readings and asked to explain any unfavorable result." (*Wyrick* v. *Fields, supra,* 459 U.S. 42, 47 [74 L.Ed.2d 214, 218-219].)

The interpretation of the stipulation presented by the defense attorney to the trial court in the present case that no questions would be asked of appellant after the polygraph machine was turned off, appears an unreasonable one. The very nature of a polygraph exam, as explained in *Wyrick,* involves questioning of a suspect of any unfavorable results.

If, at the time the test was administered it was the understanding of defense attorney that no questions would be asked after the polygraph machine was turned off, defense attorney could have instructed his client either to refuse to answer any questions after the machine was turned off or summon his attorney to observe the questions regarding appellant's unfavorable responses. The record does not show that any of these steps were taken on appellant's behalf. It is therefore the conclusion of this court that the trial court did not err in ruling that the statements made by appellant after the machine was turned off were admissible.

The judgment is affirmed.

Scott, J., and Barry-Deal, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 28, 1986.