[Crim. No. 171.    Fifth Dist.    Sept. 28, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. LARRY JOHN WRIGHT, Defendant and Appellant.

.· Morris M. Sherr, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward A. Hinz, Jr., and Michael Buzzell, Deputy Attorneys General, for Plaintiff and Respondent.

McMURRAY, J. pro tem.*—Appellant expressed a desire to hijack a truck to Dave Atchley, an informer for the Los Banos Police Department who encouraged this idea. Atchley, who indicated he would help appellant steal the truck and dispose of the loot, made arrangements with the Los Banos Police Department to enable them to stake-out to apprehend appellant with the stolen truck on the early morning of November 10, 1964. In furtherance of this plan, Atchley met appellant at about 2:15 a.m. in the outskirts of Los Banos. The appellant got out of his car, pulled out two bottles of whiskey (Seagrams and Jim Beam) and said, "I just knocked off a job in Gustine"; they then proceeded to the Trucker's Inn cafe where appellant exchanged a bag of coins, a blue roll and a green roll of coins, and a Kennedy half-dollar with a piece of tape on it marked "Save" for a $20 bill.

At about 3:45 a.m. Atchley placed a call to the Los Banos police and told the dispatcher that he was with appellant at the Trucker's Inn and that appellant had stated he had robbed the Black and White Cafe in Gustine. The dispatcher relayed this information to Officer Mangus who was on patrol in a radio car. Chief Austin of the Los Banos Police Department, at the stake-out of the planned hijacking, heard the call to Officer Mangus; told the dispatcher not to put out any more information on the radio; and arranged to meet Mangus at the police station. Upon arriving at the police station, Austin placed a call to the Gustine police and ascertained that the Black and White Cafe had been burglarized and that appel-

---

*Assigned by the Chairman of the Judicial Council.

lant worked there. Prior to this time Austin had appellant's criminal record which included convictions of burglary, escape and robbery. Chief Austin, Officer Decker and other policemen then went to the Trucker's Inn and arrested appellant sometime between 4 and 5 o'clock a.m. At the time of his arrest, appellant was searched and a bottle of Seagrams V.O. (a brand of liquor which was stocked at the Black and White Cafe) was found. Thereafter, appellant gave written permission to the police to search his car; in the search, several items, which were subsequently admitted in evidence, were found. A tire iron which closely matched the pry marks on the inside of the door of the Black and White Cafe was found; a bottle of Jim Beam whiskey, which bore a tax stamp numbered 131499256, was also found. This number was related to numbers on four bottles found in the storage room of the Black and White Cafe, bearing identical initial six digits with those set forth above, and having as their last three digits, 253, 257, 258, and 259. At the time of the search, the officers saw six books of green stamps in the car's glove compartment, but did not take them. These were subsequently recovered from Jake Neufeld, a tow truck driver who had towed the car in. Neufeld stated that he had removed the stamps and had taken them home for safekeeping. Six books of green stamps had been taken from the Black and White Cafe, one of the books beginning with a page of upside-down stamps. Among the six books of stamps taken from appellant's car was one with such a first page.

Officer Mangus retrieved from the Trucker's Inn two rolls of coins which appellant had exchanged for currency—one wrapped in green paper and one in blue paper. He also obtained three half-dollars, one of them a Kennedy half-dollar with a half-inch mark across it. A Kennedy half-dollar with a piece of tape marked, "Save," and two rolls of coins, one blue and one green, were among the items taken from the Black and White Cafe. The mark on the Kennedy half-dollar coincided with the area which would have been covered by the tape which Atchley had seen appellant remove before cashing the change.

Atchley testified to appellant's statement that he had "just knocked off a job in Gustine," which occasioned an objection on behalf of appellant. The admissibility of the other evidence was objected to as the product of an illegal search after an illegal arrest. The objections are not too clearly stated, but it is apparent from the transcript that the trial judge under-

stood that appellant was objecting to the admission of both the evidence and of the statement in that the arrest was illegal and that appellant had not been apprised of his rights before making the statement. There is no contention that the evidence was otherwise lacking to support the final judgment and sentence after the jury found the appellant guilty of second degree burglary.

The record indicated that the arrest of the appellant was made without a warrant. Such an arrest may be made by an officer "[w]henever he has reasonable cause to believe that the person to be arrested has committed a felony, whether or not a felony has in fact been committed." (Pen. Code, § 836, subd. 3.) It is stated in *People* v. *Ingle,* 53 Cal.2d 407, at 412-413 [2 Cal.Rptr. 14, 348 P.2d 577] : "Reasonable or probable cause for an arrest has been the subject of much judicial scrutiny and decision. There is no exact formula for the determination of reasonableness. Each case must be decided on its own facts and circumstances [citations]—and on the total atmosphere of the case. [Citations.] Reasonable cause has been generally defined to be such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime. [Citations.] Probable cause has also been defined as having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt. [Citations.] It is not limited to evidence that would be admissible at the trial on the issue of guilt. [Citation.] The test is not whether the evidence upon which the officer acts in making the arrest is sufficient to convict but only whether the person should stand trial. [Citation.]"

■ It is also established that information supplied by an unreliable informant, the status which the police here ascribed to Atchley, is not, standing alone, sufficient to establish reasonable or probable cause (*Ovalle* v. *Superior Court,* 202 Cal.App.2d 760 [31 Cal.Rptr. 385]; *People* v. *White,* 231 Cal.App.2d 82 [41 Cal.Rptr. 604]; *People* v. *Machel,* 234 Cal.App.2d 37, 48 [44 Cal.Rptr. 126], cert. den. 382 U.S. 839 [15 L.Ed.2d 81, 86 S.Ct. 88]; *People* v. *Gallegos,* 62 Cal.2d 176, 179 [41 Cal.Rptr. 590, 397 P.2d 174]), but such information with independent corroborating evidence may justify an arrest. (*Willson* v. *Superior Court,* 46 Cal.2d 291 [294 P.2d 36].) The last cited case indicates that while an unreliable informant's statement standing alone may not be sufficient to justify an arrest without a warrant, even when that information proves

correct in its details, if the arresting officer has knowledge gained from other sources which corroborates the informant's statement, such an arrest may be valid. ■ Here the arresting officers in addition to Atchley's information also knew of appellant's prior record including the burglaries, knew of the Black and White Cafe burglary from the Gustine police, and knew of appellant's employment at the Black and White Cafe. This state of the record justifies an arrest when it is viewed, as it must be, with an eye to ''The totality of information coming from a number of independent sources, . . . even though no single item meets the test.'' (*People* v. *Gamboa,* 235 Cal.App.2d 444, 448 [45 Cal.Rptr. 393].)

The only evidence taken in the search attendant upon the arrest was one bottle of Seagram's whiskey. The evidence taken from the automobile and at the Trucker's Inn was obtained in accordance with ordinary police practices, so far as the items at the Trucker's Inn were concerned, and in accordance with the written permission of appellant to allow the search of his automobile. ■ The green stamps which were taken from the automobile by a person other than a police officer appear to have been properly admitted because it does not appear that the person who initially took these stamps from the automobile was connected with the police at the time he took the stamps and the prohibition against search would not apply to him. (Cf. *People* v. *Evans,* 240 Cal.App.2d 291, 299-303 [49 Cal.Rptr. 501].) One of the officers who had searched the car testified to seeing green stamps in the glove compartment of appellant's automobile. ■ The consent given by the appellant appears to have been given freely and voluntarily. The trier of the fact so found, and this court is bound by that finding.

Appellant's contention that as Atchley was a police undercover agent this brings him within the scope of *Massiah* v. *United States,* 377 U.S. 201 [84 S.Ct. 1199, 12 L.Ed.2d 246], at first blush appears to present a more intricate problem. However, it should be remembered that in *Massiah* the defendant was already under indictment; the police undercover agent, who was also a codefendant with Massiah, had consented to his automobile being equipped with a radio which could broadcast conversations which he would have with the defendant; and such conversations were, in fact, had with a view to seeking evidence from the defendant himself. ■ The spontaneous declaration by appellant to Atchley does not fit within the framework of *Massiah*. The record fails to disclose that the

appellant was in custody, or that there was any interrogation which sought to elicit incriminating statements from the appellant, or that any course of investigation other than the stake-out in an attempt to apprehend appellant in the hijacking of a truck was here involved. The language in *Miranda* v. *Arizona*, 384 U.S. 436, 478 [86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726, 10 A.L.R.3d 974] : ''There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today,'' is applicable to appellant's statement made to Atchley.

Here the appellant certainly made his statement as to the burglary as a voluntary and spontaneous one; how the efforts of the Los Banos Police Department to apprehend appellant in the commission of another crime would alter the rule is not pointed out to us. The informer here asked *no* questions, and the rule relative to attempting to elicit incriminating statements does not here apply. In this case, the arrest made without a warrant was based upon reasonable and probable cause consisting of: information from an informant of unknown reliability, corroborating knowledge of appellant's prior record, knowledge that the Black and White Cafe had been burglarized, and knowledge that the appellant had worked at the Black and White Cafe. The appellant's statement to the informer Atchley *is outside of the scope of the Supreme Court's restrictions upon the use of evidence* which comes from the mouth of an accused.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.