[Civ. No. 24995.    First Dist., Div. Four.    Oct. 1, 1968.]

In re CHARLES THOMAS COREY, a Person Coming Under the Juvenile Court Law.
ROBERT NINO, as Chief Probation Officer, etc., Plaintiff and Respondent, v. CHARLES THOMAS COREY, Dedefendant and Appellant.

Sheldon Portman, Public Defender, Thomas C. Hastings and Harry J. Delizanna, Deputy Public Defenders, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and James B. Cuneo, Deputy Attorneys General, for Plaintiff and Respondent.

CHRISTIAN, J.—Charles Corey appeals from an order of the juvenile court, entered under the provisions of section 602 of the Welfare and Institutions Code, adjudging him a ward of the court. Wardship was determined upon a finding that the minor resisted an officer, in violation of Penal Code section 148. Although there was sharp conflict in the testimony

received at a contested hearing, there was substantial admissible evidence indicating that the boy wilfully resisted an officer who had come to investigate a neighborhood affray involving several youngsters. ▮ Appellant's sole contention is that the court erred in examining, before the jurisdictional hearing, a probation report containing material which was both inadmissible and prejudicial on the issue of jurisdiction—material which it was entirely proper for the court to consider in choosing a proper disposition for the minor after jurisdiction had been established. We conclude that this contention is sound and therefore reverse the order of wardship.

After hearing evidence and announcing a finding that appellant was a minor coming within the provisions of section 602 as alleged in the petition, the judge declared:

"Now, this brings us to the second part of our proceeding, which we call the disposition hearing, at which time we decide what action to take next. Now, in order to assist the Court in making this kind of a determination, the Probation Department has prepared a special study which we call a social study. This study was presented to the Court last Friday. The Court read it through thoroughly and reviewed it again this afternoon before you came to Court. Now, this tells the Court first of all what previous difficulties the boy has been involved in and what has been done about it. It tells the Court what statements were made by the boy to the Probation Officer, and what statements were made by the parents to the Probation Officer. His school report is summarized for the Court. His Santa Clara County Welfare Department summary is included, his Juvenile Hall report, his psychological report, his personal history and family background, and last of all, the Probation Officer evaluates, that is, summarizes and adds up all this data and makes a recommendation to the Court."

The judge's statement establishes beyond question that the personal history and social study contained in the dispositional report of the probation officer contained inadmissible matter prejudicial to appellant's defense and that the judge, having read the report before the hearing, had made himself aware of alleged facts which could not lawfully have been brought before him in evidence presented at the jurisdictional hearing. The question is whether the court's action was permissible under Welfare and Institutions Code sections 701, 702, and 706.

A brief historical review is helpful to an understanding of the meaning and intent of the statute. The well-known infor-

mality of earlier juvenile court procedures was to a degree purposeful, but it may also be attributed to two other circumstances: the benign role of the court as provider of supervision of children lacking effective parental guidance tended to obscure the adjudicative function performed by the court in any case where the child resists wardship; this obscurity was aggravated by the total unavailability of legal counsel in the usual case for either the probation officer or the child (compare *People* v. *Dotson* (1956) 46 Cal.2d 891, 895-896 [299 P.2d 875]).

Under former section 639 of the Welfare and Institutions Code,* it was the duty of the probation officer to "inquire into the antecedents, character, family history, and environment of every person brought before the court . . . and . . . make his report in writing to the judge thereof." Although this report commonly contained both a summary of the alleged facts bringing the child before the court and a social history bearing on the question of disposition in the event wardship were established, it was held that the report "became a judicial record that the juvenile court judge should consider in deciding the case." (*In re Halamuda* (1948) 85 Cal.App.2d 219, 223 [192 P.2d 781]; *In re Patterson* (1962) 58 Cal.2d 848, 852 [27 Cal.Rptr. 10, 377 P.2d 74]; *In re Garcia* (1962) 201 Cal.App.2d 662 [20 Cal.Rptr. 313].) Throughout the United States, probation officers have commonly followed the practice of preparing for the judge's perusal before the jurisdictional hearing a single report covering both the jurisdictional and the dispositional aspects of the case. This practice has been condemned repeatedly as taxing unnecessarily the capacity of the judge to wall off in 'his mind, as he determines the issue of jurisdiction, detrimental information included in the social study. (See Note (1958) *The California Juvenile Court*, 10 Stan.L.Rev. 471, 494; Note (1958) *Employment of Social Investigation Reports in Criminal and Juvenile Proceedings*, 58 Colum.L.Rev. 702, 718; Note (1953) *Correct Use of Background Reports in Juvenile Delinquency Cases*, 5 Syracuse L.Rev. 67, 69.)

The California juvenile court law had not received a comprehensive revaluation for many years. Therefore in 1959 the Governor of California appointed a Special Study Commission on Juvenile Justice to make a thorough analysis. One' of the commission's criticism's of juvenile justice in California

---

. *Now section 581.

was "that juvenile courts do not distinguish between the jurisdictional facts and the social data at the hearing. Consequently, wardship is sometimes decided on issues that evolve from a social investigation even though the jurisdictional facts have not been clearly substantiated.

"In our opinion, a two-stage hearing procedure is essential. This will serve to differentiate more sharply between legal proof and treatment knowledge and will result in the application of each to the appropriate question for court decision.

"We also realize that any increase in the number of hearings may further reduce the time available to hear such case. Therefore, we recommend that both hearings be permitted to be held on the same day, provided the probation report and treatment recommendations are available. The sequence, however, should be preserved in any event." (Report of the Governor's Special Study Commission on Juvenile Justice (1960) p. 28.)

In order to correct this defect the commission recommended (Report, p. 73) new statutory language which, with modifications not material to this case, were enacted as Welfare and Institutions Code, sections 701, 702, and 706. Section 701 provides that "the court shall first consider only the question whether the minor [comes within the court's jurisdiction] *and for this purpose,* any matter or information relevant and material to the circumstances or acts which are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; . . ." (Italics supplied.) The apparent intention of the legislation to separate and distinguish the jurisdictional from the dispositional aspects of the proceeding is underlined by the provision of section 702 that "if the court finds that the minor is [within its jurisdiction] it shall make and enter its findings and order accordingly and shall *then* proceed to hear evidence on the question of the proper disposition to be made of the minor. Prior to doing so, it may continue the hearing, if necessary, to receive the social study of the probation officer. . . ." (Italics supplied.) To the same effect, section 706 indicates that *after* the jurisdictional finding, "The court shall receive in evidence the social study of the minor made by the probation officer. . . ." Nevertheless, a 1965 survey indicated that a majority of California juvenile court judges continue to read the dispositional report before the jurisdictional hearing. (Edwin M. Lemert, The Juvenile Court—Quest and Realities, Task Force Report: Juvenile Delinquency and Youth Crime; The President's Commission on Law Enforcement and Ad-

ministration of Justice (Wash. 1967) p. 91 at p. 101.) The continuance of this practice has been criticized both in California and by national authorities. (See Proceedings of the Third Annual Institute for Juvenile Court Judges and Referees. Judicial Council of California (San Francisco 1964) p. 141]; Ralph E. Boches, *Juvenile Justice in California: A Reevaluation* (1967) 19 Hastings L. J. 47, 94; Comment, *Miranda Guarantees in the California Juvenile Court* (1966) 7 Santa Clara Law. 114, 120; California Juvenile Court Practice (Cont. Ed. Bar 1968) Practice Book No. 39, p. 118; Note, *Rights and Rehabilitation in the Juvenile Courts* (1967) 67 Colum.L.Rev. 281 335.) After an elaborate study of national scope the President's Commission on Law Enforcement and Administration of Justice recommended: ''To minimize the danger that adjudication will be affected by inappropriate considerations, social investigation reports should not be made known to the judge in advance of adjudication.'' (The Challenge of Crime in a Free Society, Report of the President's Commission on Law Enforcement and Administration of Justice (Washington 1967) p. 87.)

We conclude that the statutory provisions which we have reviewed express an intention on the part of the Legislature to carry out the recommendation of the Special Study Commission that considerations relevant only to the problem of disposition of the minor should not come before the court until jurisdiction has been established. Where the commission of a crime is alleged as the jurisdictional fact and the allegation is disputed, the court's error in receiving the social study before the jurisdictional hearing goes so directly to the fairness of the hearing that the resulting adjudication is not saved by article VI, section 13, of the California Constitution.

The order is reversed.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied October 31, 1968, and respondent's petition for a hearing by the Supreme Court was denied November 27, 1968. Mosk, J., was of the opinion that the petition should be granted.