[Crim. No. 3593. Fourth Dist., Div. One. Mar. 17, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
BERNARDINO ARAUZ, Defendant and Appellant.

**COUNSEL**

John Joseph McCabe, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**AULT, J.**—In an indictment returned by the Grand Jury of San Diego County, appellant, Bernardino Arauz, was charged in count I with the murder of John McKeen Bright, Jr. (Pen. Code, § 187), and in count II with attempted robbery of George Ruiz (Pen. Code, §§ 664 and 211). It also charged he was armed with a deadly weapon, a .32 caliber pistol, at the time of the attempted robbery. Appellant entered a plea of not guilty to both counts. A jury convicted him of murder and attempted robbery, fixed the degree in each instance as first degree and found he was armed with a deadly weapon at the time of the attempted robbery. He was sentenced to prison on each count for the term prescribed by law. Execution of sentence on count II (attempted robbery) was stayed pending appeal and service of sentence under count I (murder), the stay to become permanent upon completion of that sentence. We treat his appeal as an appeal from the judgment of conviction.

The facts are not in dispute. On May 28, 1968, at approximately 10 p.m., appellant entered a liquor store located at 2190 National Avenue,

San Diego, California. He carried a pistol and his face and head were covered by a black turtle-neck sweater made into a hood. He stated to Mr. George Ruiz, who owned and operated the store, "It's me again." Ruiz went to the cash register. Before he could remove any money, his dog charged appellant who turned and fled. Near the door, he ran into Jack Bright, a customer who had just entered the store. Bright grabbed appellant and a struggle ensued during which Ruiz' dog partially unmasked appellant. The gun discharged, but Bright, who was fatally wounded, continued to hold on to appellant. Both Bright and appellant fell through the front door and onto the sidewalk where appellant extricated himself and fled down the street.

Ruiz summoned the police by telephone. When they arrived, he identified appellant as the robber. Ruiz had known appellant for approximately eight years, during which time appellant had occasionally done odd jobs for him. Sergeant Garcia of the San Diego Police Department went to appellant's home and arrested him. The hood, other blood-stained clothing and the pistol used in the robbery were found hidden in a rubbish heap in a vacant lot adjacent to appellant's home.

Appellant was 16 years of age at the time of the alleged crimes. Originally, a petition was filed on his behalf in the juvenile court under section 602 of the Welfare and Institutions Code. After a hearing held pursuant to section 707 of that code, a San Diego Superior Court judge, sitting as a judge of the juvenile court, determined appellant should not be treated as a juvenile in connection with the charges pending against him, but should be held to answer to those charges as an adult. Specifically, the court found appellant "to be an adult" and ordered him "certified to the Grand Jury for indictment on the charges of the petition." It also ordered the section 602 petition dismissed upon the filing of the indictment. No specific written finding was made in the minutes, or elsewhere, that appellant was not a fit and proper person to be dealt wtih under the Juvenile Court Law.

Appellant asserts the superior court did not properly have jurisdiction to try him because of errors and irregularities in the juvenile hearing held pursuant to Welfare and Institutions Code section 707. The main thrust of his argument is the court lacked jurisdiction to try him as an adult because the court in juvenile hearing failed to make a specific finding he was not a fit subject for treatment under the Juvenile Court Law.

Welfare and Institutions Code section 707 provides in part: ". . . when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of such offense and that the minor would not be amenable to the care,

treatment and training program available through the facilities of the juvenile court, . . . the court *may* make a finding noted in the minutes of the court that the minor is not a fit and proper subject to be dealt with under this chapter, and the court shall direct the district attorney or other appropriate prosecuting officer to prosecute the person under the applicable criminal statute or ordinance and thereafter dismiss the petition . . ." (Italics added.)

■    The statute uses the permissive "may" as opposed to the mandatory "shall" with reference to the finding the minor is not a fit and proper subject to be dealt with under Juvenile Court Law and the notation of such finding in the court's minutes. (See Welf. & Inst. Code, § 15; see also *People* v. *Aadland,* 193 Cal.App.2d 584, 589-592 [14 Cal.Rptr. 462] and *People* v. *Balt,* 78 Cal.App.2d 171, 172-173 [177 P.2d 362], holding "may" to be permissive and not mandatory under other provisions of the Juvenile Court Law.)

" 'When the meaning to be given a particular term is prescribed by the Legislature in enacting a statute, that meaning is binding upon the courts.' " (*Department of Social Welfare* v. *Wingo,* 77 Cal.App.2d 316, 319 [175 P.2d 262].) Since the Legislature in section 15 of the Welfare and Institutions Code specifically provided the word "may" is permissive, its later use of the word "may" in section 707 must be given that effect. Accordingly, the juvenile court's failure to make an express finding appellant was not a fit and proper subject for consideration and treatment under the Juvenile Court Law was not error which deprived the superior court of jurisdiction to try him as an adult.

While we have held the juvenile court was not required by Welfare and Institutions Code section 707 to make an express finding appellant, as a minor over 16 years of age, was not a fit and proper person for treatment under the Juvenile Court Law before it could order him prosecuted as an adult, we do not wish to be understood as saying the court need not in fact have made that determination.    ■    It is only when the court concludes upon substantial evidence the minor is not amenable to care and treatment under the program available through juvenile court facilities, the court is empowered to order an adult prosecution. (Welf. & Inst. Code, § 707.) So long as the evidence adduced at the hearing supports such a finding, it may be properly implied from the court's order he be prosecuted as an adult. (See *People* v. *Yeager,* 55 Cal.2d 374, 387 [10 Cal.Rptr. 829, 359 P.2d 261].)

The transcript of the juvenile hearing has been made a part of the record on appeal. Testimony by appellant's probation officer revealed his past law violations as well as his previous failure to respond to the rehabilitative

procedures and facilities provided by the juvenile court. At the time of the alleged offenses, appellant was on parole from the California Youth Authority. Our review of the record of that hearing, including the statements made by the judge, not only convinces us substantial evidence was presented to support a finding appellant was not a fit and proper person to be dealt with under Juvenile Court Law, but also satisfies us the judge in fact made such a determination even though he failed to express it in a specific written finding.

Welfare and Institutions Code section 707 also provides: "The court shall cause the probation officer to investigate and submit a report on the behavorial patterns of the person being considered for unfitness." Appellant asserts this provision operates to prejudice the minor rather than protect him and is in violation of the rule established in *In re Corey,* 266 Cal.App.2d 295 [72 Cal.Rptr. 115], reiterated in *In re Steven F.,* 270 Cal.App.2d 603 [75 Cal.Rptr. 887]. *Corey* construed the requirements of Welfare and Institutions Code sections 701, 702 and 706, and did not deal with section 707. It held it was prejudicial and improper for the judge to read the probation officer's "social report," which contained matter both inadmissible and prejudicial on the issue of jurisdiction (i.e., on the question of whether the minor had committed the offense alleged in the petition) until he had determined the question of jurisdiction (i.e., made a finding the allegations of the petition were true).

■ We find no inconsistency between the provision in section 707 permitting the consideration and use of information concerning the minor's behavioral background in a hearing to determine whether he is to be handled as a juvenile or as an adult, and the rule established in *Corey,* forbidding the consideration of such information in a hearing to determine whether the minor in fact committed the offense alleged in the petition. The two hearings have entirely different purposes. While the rule in *Corey* might well operate to prevent a judge who has read and considered the probation officer's report, prepared and submitted pursuant to section 707, from later presiding at the jurisdictional hearing, should continued juvenile consideration be ordered, we are not here confronted with that problem. The court ordered appellant treated as an adult under the general criminal law. The judge who conducted the hearing and made the order did not participate in his trial. The rule in *Corey* has no application to the instant case.

In his brief, appellant complains of other errors and irregularities in connection with his juvenile hearing which he has not supported with either argument or authorities. While not required to do so (*In re Steiner,* 134 Cal.App.2d 391, 399 [285 P.2d 972]; *People* v. *Cornett,* 93

Cal.App. 744, 747 [209 P.2d 647]), we have examined his claims and find each to be without merit.

Shortly after the conclusion of the juvenile hearing, appellant had a conversation with his parole officer, William Martin, in the Juvenile Hall during which he orally confessed to the attempted robbery and killing. Martin was permitted to relate the conversation over objection at the trial. Appellant contends it was reversible error to permit this testimony, because his confession was obtained in violation of his Sixth Amendment right to counsel.

Martin had attended the juvenile hearing. He had been called as a witness by appellant and had testified at the hearing. He was thus aware appellant was represented by an attorney. Martin requested the interview with appellant, but the record does not indicate what he wished to discuss.

During the People's case-in-chief, Martin testified over objection as follows: He took appellant, who appeared to be upset, to a small room in Juvenile Hall; appellant stated he wanted to talk to his mother; he placed the telephone call and appellant spoke to his mother for approximately 10 minutes; Martin did not overhear the mother's end of the conversation. After appellant hung up, he turned to Martin and said, "Mr. Martin, I killed him." Martin then told appellant, "Hold it. I want you to know that you don't have to tell me anything and that you have a right to a lawyer and I think that you should have one." Appellant then stated, "My mother told me to tell you the truth. I held up the store and I killed the man. I was high at the time."[1]

Appellant contends these circumstances demonstrate a violation of his right to counsel as established in *Massiah* v. *United States,* 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199]. We believe, as did the trial judge when he ruled the testimony admissible after extensive argument, appellant's statement to his parole officer, as established in the People's case-in-chief, was spontaneous and voluntary and not the product of interrogation or other conduct deliberately designed to elicit his confession.

Many California Appellate Court decisions have interpreted *Massiah* as standing for the proposition incriminataing statements deliberately obtained by the prosecuting authorities from the accused, after he has been formally charged,[2] and in the absence of his counsel, either by way of

---

[1]It is apparent from the record, Martin suffered from an unfortunate and severe speech defect. In setting forth his testimony, for the purpose of clarity, we have eliminated the false starts, redundancies, and interjections which appear in the reporter's transcript, and which resulted from his speech problem.

[2]While appellant was not yet under indictment, a juvenile petition alleging the offenses had been filed, the court had ordered the district attorney to take the matter to the grand jury, and he was in custody. We believe his status was such he comes within the protective mantle of *Massiah.*

direct interrogation or through surreptitious means, are inadmissible. (*People* v. *Brice,* 239 Cal.App.2d 181, 191-192 [48 Cal.Rptr. 562]; *People* v. *Bowman,* 240 Cal.App.2d 358, 372 [49 Cal.Rptr. 772]; *People* v. *Wright,* 245 Cal.App.2d 265, 269-270 [53 Cal.Rptr. 844]; *People* v. *Boulad,* 235 Cal.App.2d 118, 126 [45 Cal.Rptr. 104]; *People* v. *Apodaca,* 252 Cal.App.2d 656, 659-660 [60 Cal.Rptr. 782].) The rule has not been extended to cover spontaneous or voluntary statements. (*People* v. *Wright, supra,* 245 Cal.App.2d 265, 269-270.)

Because Martin initiated the conversation, knowing criminal charges had been filed and knowing appellant had an attorney, we are urged to infer he had an improper or surreptitious motive. There is nothing in the record to support such an inference. The fact appellant was suspected of involvement in other crimes did not terminate Martin's relationship as a parole officer. We can envisage many legitimate reasons why Martin might wish to speak to appellant and will not infer his purpose in seeking the interview was to interrogate him about the pending criminal charges, particularly since the matter was not explored at the time of trial. Certainly Martin was was not obliged to ignore appellant when he blurted, "I killed him," etc. *People* v. *Isby,* 267 Cal.App.2d 484 [73 Cal.Rptr. 294] and *People* v. *Valencia,* 267 Cal.App.2d 620 [73 Cal.Rptr. 303], relied on by appellant, are not in point. The incriminating statements obtained in *Isby* and the confession secured in *Valencia* resulted from police interrogation deliberately initiated for those very purposes.

■ Martin made a detailed written report of his interview with appellant to the California Youth Authority. A portion of the report was used in the cross-examination of the defense psychiatrist, Dr. Hollinger. Martin was called in rebuttal and that portion of the report used in the cross-examination of Dr. Hollinger was read to him. He was asked if he made such a report and if appellant made the statements contained therein. The report contained a more detailed statement of appellant's confession than Martin had testified to on his first appearance. Appellant asserts the trial judge was again required to rule on "the voluntariness of the confession" and failed to do so. We know of no such requirement and the cases cited by appellant do not support the proposition urged. We further note no such contention was urged at trial and no objection was made to Martin's rebuttal testimony.

■ Appellant next contends the court erred in permitting the People's psychiatrist, Dr. Larson, to testify in rebuttal concerning appellant's mental capacity. Dr. Larson had not examined appellant and his opinion was based upon the written reports of the defense experts. It is further contended

the court erred in requiring the defense to furnish the prosecution with copies of the written reports.

Both contentions are without merit. Appellant did not testify at the trial. Through expert witnesses, a psychologist and a psychiatrist, he offered evidence which tended to show he was under the influence of a barbiturate at the time of the alleged offenses and suffered from a diminished capacity. Appellant cooperated with, gave statements to and was examined by his own experts. He refused to permit an examination by Dr. Larson. To preclude the People from presenting expert testimony based upon the information contained in the defense expert's reports, under this circumstance, would mean the People could present no evidence on the issue of diminished capacity. The unfairness of the proposition advanced is apparent. In *People v. Brekke,* 250 Cal.App.2d 651, 661-662 [58 Cal.Rptr. 854], the defendant refused to permit an examination by the People's psychiatrist. The court held the psychiatrist's opinion admissible although he had not examined the defendant and based his opinion primarily on information contained in the report of another doctor. (See also *People v. Bassett,* 69 Cal.2d 122, 146, fn. 22 [70 Cal.Rptr. 193].) Under similar circumstances the court in *People v. Schindler,* 273 Cal.App.2d 624 stated at page 643 [78 Cal. Rptr. 633]: "Sections 801 through 805 of the Evidence Code provide for the testimony of an expert psychiatrist and permit an opinion by such an expert based upon the reports and opinions of other psysicians."

The court did not err in permitting Dr. Larson to express his opinion concerning appellant's mental capacity at the time of the alleged offenses. Its order requiring the defense to furnish the prosecution with copies of the written reports of the experts who would be called as witnesses was also proper. (*People v. Houser,* 238 Cal.App.2d 930, 934-936 [48 Cal.Rptr. 300].)

■ Mr. Floyd Cocking, Vice Principal of Snyder Continuation School, was called as a witness by appellant. He was permitted to testify from school records that appellant had been suspended from school on March 20, 1968, at which time he was observed to be very sleepy and unable to talk plainly. He was not permitted to testify appellant was suspected of being under the influence of some "depressant." Appellant contends rejection of this evidence was error.

Cocking did not personally see appellant on March 20, 1968. The notation in the school records appellant was suspected of being under the influence of a "depressant" was a conclusion not made admissible merely because it was a part of such records. ■ School records, kept in the

regular course of school business, are made admissible as an exception to the hearsay rule by the Uniform Business Records Act. (Evid. Code, § 1271.) This does not mean, however, everything which appears in the records becomes admissible. The act does not make admissible that which would be inadmissible if the person making the record was called as a witness and examined concerning it in court. (*Hutton* v. *Brookside Hospital,* 213 Cal.App.2d 350, 355 [28 Cal.Rptr. 774, 29 Cal.Rptr. 670]; *People* v. *Terrell,* 138 Cal.App.2d 35, 57 [291 P.2d 155].) Furthermore, by the terms of the act itself, it is only a writing which records "an act, condition or event" which is made admissible: ". . . a conclusion is neither an act, condition or event; it may or may not be based upon conditions, acts or events observed by the person drawing the conclusion; it may or may not be founded upon sound reason; the person who has formed the conclusion recorded may or may not be qualified to form it and testify to it. Whether the conclusion is based upon observation of an act, condition or event or upon sound reason or whether the person forming it is qualified to form it and testify to it can only be established by the examination of that party under oath." (*People* v. *Terrell, supra,* 138 Cal.App. 2d 35, 57-58 [291 P.2d 155]; see also *People* v. *Williams,* 187 Cal.App.2d 355, 364-365 [9 Cal.Rptr. 722].) ■ The proffered evidence was properly rejected.

■ The trial court also properly rejected evidence of appellant's academic achievements as revealed by the records as being in themselves irrelevant to the issue of diminished capacity. Its refusal to allow Mr. Cocking to interpret the recorded results of intelligence tests was also correct. No foundation had been laid to permit him to make such interpretation.[3]

■ Finally, it is urged the trial court was required to instruct the jury *sua sponte* on the issue of self-defense. The contention is without merit. The undisputed evidence shows appellant was engaged in an armed robbery at the time the altercation resulting in Bright's death occurred. Under no circumstance was appellant entitled to self-defense instructions.

After a careful review of the entire record and a consideration of all points raised on appeal, we are convinced appellant was fairly tried and properly convicted. No prejudicial error occurred.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied April 2, 1970.

---

[3]The trial judge correctly pointed out these records would be available in court for such use as appellant's expert witnesses might wish to make of them.