Filed 6/16/21  P. v. Hermosillo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>ISSAC HERMOSILLO,<br><br>     Defendant and Appellant. | G060035<br><br>(Super. Ct. No. C1889169)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Santa Clara County, Shelyna V. Brown, Judge.  Affirmed.

Patrick J. Hoynoski for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Catherine A. Rivlin and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Issac Hermosillo and his son were in a Target store stealing some video games. As they were attempting to leave, there was a physical altercation involving Hermosillo, his son, and Target loss prevention employees. Police arrested Hermosillo about a mile away from the store. A jury later convicted Hermosillo of theft by force or fear (an "*Estes* robbery"). (See *People v. Estes* (1983) 147 Cal.App.3d 23.)

Hermosillo argues the trial court erred by: A) admitting evidence of two prior uncharged thefts; B) denying his request to instruct the jury on the defense of others; C) giving the jury a flight instruction; and D) cumulative prejudice.

We find no errors and affirm the judgment.


I

FACTS AND PROCEDURAL BACKGROUND

On April 15, 2018, at about 1:00 p.m., Hermosillo and his adult son were in the electronics department of a Target store in Santa Clara. Hermosillo picked up several video games and went to the clothing department. Hermosillo selected some pants, "rolled up" the video games into the pants, and then went inside a fitting room. Meanwhile, Hermosillo's son took some video games to the shoe department, used a magnet to disable the games' security devices, and placed the video games into a plastic bag. Hermosillo and his son then each proceeded separately toward the front of the store.

As Hermosillo's son walked into the exit area (the vestibule), a loss prevention officer (LPO) in plain clothes, identified himself and asked about the video games. Hermosillo's son tried to "blow past" the LPO "and run out of the store." The LPO "grabbed both his arms . . . and then put him up against the wall." As Hermosillo's son struggled with the LPO, three other Target employees entered the vestibule to assist the LPO with the apprehension.

Hermosillo then entered the vestibule and yelled, "Get off him.'" Hermosillo swung a bicycle tire at the store employees, hitting two of them. A loss

2

prevention manager ordered the employees to "disengage" according to "policy and the safety of others."  The employees then told Hermosillo to leave, as one of them pushed Hermosillo outside of the store.  Hermosillo rode off on a bicycle, while his son ran away from the store.

The police detained Hermosillo about a mile away from the store.  The police found a magnet on Hermosillo and another attached to his bike.  The police did not locate any video games.

A jury found Hermosillo guilty of one count of second degree robbery.  The court granted Hermosillo probation for three years, subject to various terms and conditions, including one year in county jail.

II

DISCUSSION

Hermosillo contends the court erred by:  A) admitting evidence of two prior uncharged thefts; B) denying his request to instruct the jury on the defense of others; C) giving the jury a flight instruction; and D) cumulative error.

A.  *Evidence of Two Prior Uncharged Thefts*

A court's ruling on the admissibility of evidence is reviewed for an abuse of discretion.  (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1095.)  "Specifically, we will not disturb a trial court's admissibility ruling "'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'""  (*People v. Morales* (2020) 10 Cal.5th 76, 97.)

A judgment cannot be reversed based on the erroneous admission of evidence unless:  1) an appellant objected to the evidence on a specific ground; and 2) the reviewing court finds the "evidence should have been excluded on the ground stated."

(Evid. Code, § 353, subds. (a),(b).)[1]  Further, an appellant must establish that the error "complained of resulted in a miscarriage of justice."  (§ 353, subd. (b); see *People v. Watson* (1956) 46 Cal.2d 818, 836 [defendant must show a reasonable probability of more favorable outcome in the absence of the error].)

In this part of the discussion, we will:  1) review general principles of law regarding robberies and evidence of uncharged bad acts; 2) consider the relevant facts from the record below; and 3) analyze and apply the law to the relevant facts.

### 1.  *General Principles of Law*

A robbery consists of several elements:  1) a person had possession of property; 2) the property was taken from the person or from his or her immediate presence; 3) the property was taken against the will of that person; 4) the taking was accomplished either by force or fear; and 5) the property was taken with the specific intent to permanently deprive the person of the property.  (Pen. Code, § 211.)  It is not essential the property be carried away.  If the property is seized without the use of force or fear, but force or fear is used while the asportation (carrying away) is still in progress, and the defendant has not reached a place of safety, the defendant can be convicted of what is known as an *Estes* robbery.  (*People v. Estes*, *supra*, 147 Cal.App.3d 23.)

Generally, a defendant may be convicted of a crime either as a direct perpetrator or as an aider and abettor.  (Pen. Code, § 31.)  "If the defendant himself commits the offense, he is guilty as a direct perpetrator.  If he assists another, he is guilty as an aider and abettor."  (*People v. Perez* (2005) 35 Cal.4th 1219, 1225.)  An aider and abettor is a person who "'knowingly and with criminal intent aids, promotes, encourages, or instigates by act or advice'" a perpetrator of a crime.  (*People v. Beeman* (1984) 35 Cal.3d 547, 561.)  "For purposes of determining aider and abettor liability, the

---

[1] Further undesignated statutory references are to the Evidence Code.

4

commission of a robbery continues until all acts constituting the offense have *ceased*."
(*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.)

Evidence of uncharged misconduct is inadmissible if its purpose is to show a criminal defendant had a disposition or propensity to commit the charged offense. (§ 1101, subd. (a).) However, "this rule does not prohibit admission of evidence of uncharged misconduct when such evidence is relevant to establish some fact other than the person's character" such as intent, knowledge, and common plan or scheme. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 393; § 1101, subd. (b).) A trial court's ruling is evaluated based on the evidence—or offer of proof—known to the court at the time of its ruling. (See *People v. Hendrix* (2013) 214 Cal.App.4th 216, 243.)

"Evidence of uncharged crimes is admissible to prove identity, common design or plan, or intent only if the charged and uncharged crimes are sufficiently similar to support a rational inference of identity, common design or plan, or intent." (*People v. Kipp* (1998) 18 Cal.4th 349, 369.) "The least degree of similarity . . . is required in order to prove intent." (*Ewoldt*, *supra*, 7 Cal.4th at p. 402.) "A greater degree of similarity is required in order to prove the existence of a common design or plan." (*Ibid*.) "The greatest degree of similarity is required for evidence of uncharged misconduct to be relevant to prove identity." (*Id*. at p. 403.)

If a trial court finds uncharged misconduct evidence is relevant to prove a material fact other than the defendant's criminal disposition, the court must then consider whether the potential for prejudice outweighs the probative value. (§ 352; *People v. Lewis* (2001) 25 Cal.4th 610, 637.) The "'probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury.'" (*Id*. at p. 637.)

5

## 2. Relevant Proceedings

The prosecution filed a pretrial motion seeking to admit Hermosillo's prior convictions for purposes of impeachment (should he testify at trial). The prosecution also filed a pretrial motion summarizing the anticipated evidence and seeking to admit two prior uncharged thefts, which Hermosillo was alleged to have committed with his son a few weeks before the charged robbery:

"During the <u>uncharged</u> March 1, 2018, incident, Defendant and his same accomplice entered a Target store. Defendant concealed merchandise underneath his shirt while his accomplice tried to steal video games. Both were caught and admitted trying to steal the merchandise. The accomplice possessed a magnetic device that is used to defeat the security mechanism on the video games. A loss prevention officer would testify to witnessing these facts.

"During the <u>uncharged</u> March 19, 2018, incident Defendant and his same accomplice entered a Target store. They were together in the video game section for a long time and the accomplice was seen using a device to defeat the security mechanism on certain video games. The accomplice would then put the games back on the shelf. Defendant would then put the games into his backpack and leave. A loss prevention officer would testify to witnessing these facts."

The prosecution sought to admit the prior uncharged acts "to establish intent and common plan or scheme." The prosecution also sought to admit the evidence to show knowledge: "Defendant knew the security guards were in fact Target security guards during the charged incident. The defense will claim that Defendant thought there were anonymous people attacking his accomplice which justified his acting to defend the accomplice. Nonsense. He has been caught by Target security before while stealing video games with his accomplice. He knew who they were."

After listening to argument from the parties during a pretrial hearing, the court stated its ruling as follows:

6

"All right. Thank you both, counsel.

"I find these uncharged acts to be extremely similar.

"Both accomplices--the accomplice is the same or other person involved is the same in all events. They're all Target Stores. They're all video games. And each time a device is used to defeat the security mechanism. I think intent, common plan and scheme, and if the defense is to argue--as the People have laid it out, I think knowledge also comes into play.

"I'm not sure what the defense will argue, . . . but this is almost classic 1101(b), almost textbook.

"So the Court is going to allow the March 1, 2018, and the March 19, 2018, to come in under 1101." As far as the prior convictions, the court ruled: "All right. So with my previous [section 1101, subdivision (b)] ruling, the Court is going to exclude the 2016 misdemeanor, the 2017 misdemeanor. They're very similar and I believe it is going to lend itself to propensity. [¶] I find that it is more prejudicial than probative and the Court will exclude those."

Two Target loss prevention managers testified at trial as to the uncharged thefts on March 1, 2018, and March 19, 2018. Their testimony was consistent with the prosecution's offer of proof. The court gave a limiting instruction to the jury. (CALCRIM No. 375 ["Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime"].)

### 3. Analysis and Application

During the pretrial hearing, the trial court analyzed the prior uncharged thefts as compared to the anticipated evidence about the charged robbery. The court said the same perpetrators were involved, the stores were all the same, the intended stolen items were the same, and in each case, devices were used to defeat security systems. Based on these factors, the court found the uncharged thefts and the charged robbery "to

7

be extremely similar." Further, the court admitted the evidence concerning the two prior thefts to show Hermosillo's intent, common plan or scheme, and knowledge, which are allowable purposes under section 1101, subdivision (b). Moreover, the court took additional steps to limit the prejudicial impact of the two prior thefts by not allowing some of Hermosillo's other prior offenses to be admitted for impeachment purposes (should he have elected to testify in his defense), and by giving the appropriate limiting instruction to the jury. We cannot say the court's ruling was arbitrary or capricious; rather, the court appears to have appropriately weighed its decision according to the facts and the law. Thus, we find no abuse of the court's discretion.

Hermosillo argues *People v. Hendrix* (2013) 214 Cal.App.4th 216, 242-243 (*Hendrix*), compels a different result. We disagree.

In *Hendrix*, defendant got into a fight with a private security guard at an apartment complex and fled. (*Hendrix*, *supra*, 214 Cal.App.4th at p. 221.) Additional security guards and police officers gave pursuit. Defendant forcibly resisted when one of the police officers attempted to detain him. (*Ibid*.) The prosecution charged defendant with knowingly resisting an executive officer by use of force or violence. (*Id*. at p. 220.) Defendant argued he did not know he had resisted a police officer, rather than one of the security guards. At trial, the prosecution introduced facts about defendant's prior encounters with police in which he resisted through force or violence. (*Id*. at pp. 220-222.) The appellate court reversed because the prior convictions did not involve defendant having to differentiate between private security guards and police officers. (*Id*. at p. 240.) The court found the facts in the prior crimes "were dissimilar in a material way" from the facts in the current charge, and therefore the prior convictions "lacked probative value" and should not have been admitted. (*Id*. at p. 239.)

Here, Hermosillo's two prior thefts were not "dissimilar in a material way" from the instant crime. All three crimes involved Hermosillo stealing video games with his son at a Target store, and all three incidents were very close in time to each other.

8

The thefts were also accomplished using virtually the same modus operandi. There was an additional physical confrontation with the store employees in the instant case, but this simply transformed what would have been a routine theft into an *Estes* robbery. Further, the uncharged thefts were relevant to show Hermosillo likely knew that the people detaining his son were loss prevention employees. The facts in *Hendrix*, *supra*, 214 Cal.App.4th 216, are markedly distinguishable from the relevant facts in this case. Thus, *Hendrix* does not alter our analysis that the trial court did not abuse its discretion.

Hermosillo argues: "The uncharged evidence was cumulative on the issue of intent to steal." (Capitalization omitted.) We disagree.

Although proffered evidence may be relevant, it may be excluded "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) When evidence "is *merely* cumulative of other evidence, then the probative value of the other crimes evidence is diminished." (*Hendrix*, *supra*, 214 Cal.App.4th at p. 244, italics added.) However, "so long as facts testified to by a party are not *conclusively* established or admitted, they are open to further proof." (*Evans v. Industrial Acc. Com.* (1945) 71 Cal.App.2d 244, 248-249, italics added.)

Here, the evidence of the prior uncharged thefts was arguably cumulative of Hermosillo's intent. That is, there was other evidence of Hermosillo's intent to steal beyond the uncharged thefts. For instance, Hermosillo was seen rolling up the video games he had taken into some pants. However, the evidence of Hermosillo's intent was also arguably not conclusive. For instance, Hermosillo did not have any video games on him at the time of his arrest. Significantly, with respect to "undue prejudice," the uncharged thefts were much less inflammatory (or prejudicial) than the charged *Estes* robbery. In sum, we cannot find the trial court abused its discretion on the basis that the evidence of the uncharged prior thefts was "merely" cumulative prejudicial evidence

9

under section 352.  (See *People v. Anderson* (2018) 5 Cal.5th 372, 402 [a court has broad discretion in deciding whether to admit or exclude evidence under section 352].)

Finally, Hermosillo argues:  "The uncharged conduct lacked any probative value as it relates to the robbery."  (Capitalization omitted.)  We disagree.

The trial court instructed the jury on the elements of robbery that needed to be proven beyond a reasonable doubt:  "When the defendant used force or fear he intended to deprive the owner of the property permanently or to remove the property from the owner's possession . . . ."  The court further instructed:  "The defendant's intent to take the property must have been formed *before or during* the time he used force or fear.  If the defendant did not form this required intent until after using the force or fear then he did not commit robbery."  (CALCRIM No. 1600, italics added.)  The court also instructed:  "A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator."  (CALCRIM No. 400.)

Here, based in part on the evidence of the prior uncharged thefts, a juror could reasonably infer Hermosillo formed the intent to take the video games (or formed the intent to aid and abet his son) sometime *before* he swung the bicycle tire at the Target employees.  Consequently, the evidence of the prior uncharged thefts was probative as to Hermosillo's intent as it relates to the *Estes* robbery.  In sum, we find that the trial court did not commit error under the provisions of section 1101, subdivision (b).

B.  *Instruction on Defense of Others*

Hermosillo argues the trial court erred by denying his request to instruct the jury on defense of others.  We disagree.

A trial court must ordinarily instruct on a defense when a defendant requests it and substantial evidence supports it.  (See *People v. Stitely* (2005) 35 Cal.4th 514, 550-551.)  When there is evidence from which a jury could reasonably conclude a defendant had an actual or honest belief in the need to defend against imminent danger to

10

himself or others, such an instruction is proper. (*People v. Rodriguez* (1997) 53 Cal.App.4th 1250, 1269.) For non-homicide crimes, the defendant's belief must be objectively reasonable. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082-1083.)

Substantial evidence means evidence of a defense, which, if believed, would be sufficient for a reasonable jury to find a reasonable doubt as to the defendant's guilt. (*People v. Salas* (2006) 37 Cal.4th 967, 982-983.) We apply a de novo standard of review. (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.)

It is well established that self-defense is not a defense to a robbery charge. (See, e.g., *People v. Arauz* (1970) 5 Cal.App.3d 523, 533; *People v. Costa* (1963) 218 Cal.App.2d 310, 316.) A robbery defendant may not "shift the blame to the victim." (*People v. Gomez* (2008) 43 Cal.4th 249, 264.) "It is the conduct of the perpetrator who resorts to violence . . . , and not the decision of the victim to confront the perpetrator, that should be analyzed in considering whether a robbery has occurred." (*Ibid*.) The same rule logically extends to the defense of others. (See Pen. Code, §§ 692, 694; see also 40 C. J. S. (2021) Defense of Another § 166 ["Generally, the doctrine of the defense of others is not available to a defendant engaged in unlawful conduct"].) [2]

In this case, after the close of evidence and prior to jury deliberations, Hermosillo requested the trial court instruct the jury on the defense of others. (See CALCRIM No. 3470 [Right to Self-Defense or Defense of Another (Non-Homicide)].) After hearing argument from both sides, the court ruled as follows:

"All right. With regard to self-defense, I think that the knowledge element is key. I think that the evidence that we have in this case is that based on not just the 1101, but what we have in front of us as far as evidence that Mr. Hermosillo had secreted

---

[2] "Lawful resistance to the commission of a public offense may be made: [¶] 1. By the party about to be injured; [¶] 2. By other parties." (Pen. Code, § 692.) "Any other person, in aid or defense of the person about to be injured, may make resistance sufficient to prevent the offense." (Pen. Code, § 694.)

11

some items that his son had secreted some items, that they had done these together on other occasions for the purpose of theft. They had been in the store at the same time. They were leaving the store near the same time. I think that is circumstantial evidence that a theft was being committed, and Mr. Hermosillo had knowledge thereof. You can argue exactly opposite of what I'm saying. I'm just saying evidence to support this instruction that you're requesting.

"I don't think that self-defense applies to further a crime. You can't intervene in a theft or robbery or any other crime and then claim self-defense or defense of others when the act itself is not legal. I think you can argue that he didn't know that his--that the other person was taking things. You can argue that. But what I'm saying is, is there evidence to support self-defense and the circumstances? And I do not believe that there is. I believe this is--the facts don't support the court giving 3470."

We agree with the trial court's legal analysis. Because Hermosillo was charged with a robbery, he was not entitled to a jury instruction on self-defense or defense of others. (See *People v. Arauz*, *supra*, 5 Cal.App.3d at p. 533; *People v. Costa*, *supra*, 218 Cal.App.2d at p. 316.)

In any event, there was extensive testimony about Hermosillo's participation in the *Estes* robbery, which was corroborated by surveillance video. Under these circumstances, Hermosillo's use of a bicycle tire as a weapon to further the crime was plainly not objectively reasonable. (See *People v. Humphrey*, *supra*, 13 Cal.4th at p. 1082.) Thus, we find the court's denial of Hermosillo's request for a defense of others instruction was not arguably prejudicial. (See *People v. Watson*, *supra*, 46 Cal.2d at pp. 836-837 [defendant must show a reasonable probability of a different outcome in the absence of the error]; see also *Chapman v. California* (1967) 386 U.S. 18, 23-24 [prosecution must show the error was harmless beyond a reasonable doubt].)

## C.  Flight Instruction

Hermosillo argues:  "The trial court erred by instructing the jury with [the flight instruction] because the circumstances fail to suggest that Mr. Hermosillo's departure was motivated by a consciousness of guilt."  We disagree.

"In any criminal trial or proceeding where evidence of flight of a defendant is relied upon as tending to show guilt, the court shall instruct the jury substantially as follows:  [¶]  The flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in deciding his guilt or innocence.  The weight to which such circumstance is entitled is a matter for the jury to determine."  (Pen. Code, § 1127c.)  A flight instruction "'is proper where the evidence shows that the defendant departed the crime scene under circumstances *suggesting* that his movement was motivated by a consciousness of guilt.'"  (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055, italics added.)

Here, based on the evidence admitted during the trial, a jury could reasonably infer Hermosillo fled from the Target store because he knew he had just been involved in a crime.  Therefore, we find that the giving of the flight instruction was not error because there was evidence "suggesting" Hermosillo's flight "was motivated by a consciousness of guilt.'"  (*People v. Bradford, supra,* 14 Cal.4th at p. 1055.)

Moreover, the jury was instructed that Hermosillo's flight, *if proved*, was not sufficient to establish his guilt, but was one factor that could be considered.  (See CALCRIM No. 372.)  Thus, even if we were to conclude that the flight instruction should not have been given, we would find the error to be harmless under any standard.

## D. Cumulative Prejudice

Finally, Hermosillo argues the cumulative prejudicial effect of the court's three alleged errors require reversal.  We disagree.

"In theory, the aggregate prejudice from several different errors occurring at trial could require reversal even if no single error was prejudicial by itself." (*In re Reno* (2012) 55 Cal.4th 428, 483.) However, the rejection of each of defendant's individual claims "cannot logically be used to support a cumulative error claim [where] we have already found there was no error to cumulate." (*Ibid.*)

In short, since we have found Hermosillo's three individual claims of error to be without merit, there is no cumulative prejudice to aggregate.

## III

## DISPOSITION

The trial court's judgment is affirmed in all respects.



MOORE, J.

WE CONCUR:


O' LEARY, P. J.


BEDSWORTH, J.

14